WESTLAKE, APPELLANT, v. KEATING GOLD MINING CO. ET AL., RESPONDENTS.

(No. 3,276.)

(Submitted September 19, 1913.   Decided October 18, 1913.)[1]

[136 Pac. 38.]

*Personal Injuries—Master and Servant—Mines and Mining— Violation of Statute—Negligence Per Se—Causal Connection Between Negligence and Injury—Safe Place to Work—Explosives—Appliances—Negligent Use—Expert Testimony— Assumption of Risk.*

Personal Injuries—Negligence—Pleading and Proof.
   1.   Plaintiff in a personal injury action need not prove negligence in all the particulars charged in his complaint, evidence tending to establish negligence in any of the particulars alleged being sufficient to take the case to the jury.

Same—Master and Servant—Violation of Statute—Negligence *Per Se.*
   2.   The violation of a specific duty imposed by statute, such as the storing of dynamite in a mine in quantity greater than 3,000 pounds (Rev. Codes, sec. 8546), or storing it at a place therein where, should it accidentally explode, escape by the mine workmen would be cut off, is negligence *per se.*

   [As to duty of mine owners to prevent injury to their employees, see note in 87 Am. St. Rep. 557. As to assumption of risk on failure of employer to perform statutory duty, see note in Ann. Cas. 1913C, 210. As to liability of mine owner to employee for injuries from premature explosion, see note in Ann. Cas. 1913C, 954. As to liability of mine owner for injuries caused by falling of roof of mine, see note in Ann. Cas. 1912B, 577.]

Same—Evidence—Negligence—Causal Connection With Injury.
   3.   The requirement of the rule that, before negligence can become a basis of recovery for personal injuries, a causal connection must be shown between it and them, *held* to have been satisfied by the showing of plaintiff, who sought damages sustained by reason of an explosion of a quantity of dynamite stored in a mine contrary to statutory provision, to the effect that an excessive quantity was kept in the mine, that it exploded and that he was injured.

Same—Absence of Causal Connection.
   4.   Plaintiff who, at the time of the explosion of a quantity of dynamite stored at a place in a mine contrary to the provisions of section 8546, Revised Codes, was not so situated as to have his escape from the mine cut off by it, could not charge as an act of negligence the storage of the powder in a place where, in case of accidental discharge, escape by those working in the mine would be cut off, since the causal connection between his injuries and the stoppage of egress from the mine would be lacking.

Same—Safe Place to Work—Complaint—Sufficiency.
   5.   The allegation that defendant mining company had negligently stored dynamite at a place where, should an explosion occur, the lives

of persons working in the mine would be imperiled, *held,* the equivalent of a charge of negligence on part of the master in failing to furnish his employee a reasonably safe place in which to work.

Same—Explosives—Appliances—Negligent Method—Evidence—Sufficiency.
6.   Evidence *held* sufficient to justify submission to the jury of the question whether or not defendant had, in the selection of electricity for thawing dynamite, adopted a reasonably safe method, as well as to sustain the charge of negligence based on the overheating of the explosives through the means employed.

Same—Dynamite—Cause of Explosion—Expert Testimony—Admissibility.
7.   Evidence sought to be elicited from miners who, though not claiming any precise knowledge of the constituents of dynamite had handled it and knew its properties from a practical point of view, tending to show that the bursting of an electric light bulb may bring about an explosion of dynamite being thawed in a box by means of incandescent electric lights, was admissible.

Same—Appliances Used Elsewhere—Evidence Inadmissible, When.
8.   Where the charge of negligence on the part of defendant mine owner was based, not upon the use of electricity in thawing dynamite but upon the manner and extent in which it was employed, evidence that it was not elsewhere resorted to as a thawing agency was properly excluded.

Same—Safety of Appliance—Expert Testimony—Admissibility.
9.   The question whether the use of electricity for thawing dynamite as employed by defendant was a safe one was properly one for expert testimony.

Same—Motion to Strike Testimony—When Refusal not Error.
10.   Refusal of motion to strike all of certain testimony, parts of which only were inadmissible, was not error.

Same—Assumption of Risk.
11.   Under the rule that to make out a case of assumption of risk the injured party must have known of and appreciated the danger from which he suffered, *held* that plaintiff assumed the risk of all dangers incident to the dynamite stored in the mine as he saw them, and not those due to a negligent method of thawing pursued out of his sight and with which he had nothing to do.

*Appeal from District Court, Broadwater County; W. R. C. Stewart, Judge.*

ACTION by Alexander Westlake against the Keating Gold Mining Company and another. Plaintiff appeals from the judgment of nonsuit. Reversed and remanded for retrial.

*Messrs. Walsh & Nolan,* for Appellant, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

The evidence showed that at the time of the explosion there was a quantity in excess of 4,000 pounds of dynamite on this level stored near the shaft and in the thawer in plain violation of this statute. This in itself constituted negligence. (*Cameron*

*v. Kenyon-Connell Com. Co.,* 22 Mont. 312, 74 Am. St. Rep. 602, 44 L. R. A. 508, 56 Pac. 358; *Neary* v. *Northern Pac. R. Co.,* 41 Mont. 480, 110 Pac. 226; *Mize* v. *Rocky Mountain Bell Tel. Co.,* 38 Mont. 521, 129 Am. St. Rep. 659, 16 Ann. Cas. 1189, 100 Pac. 971; *Denver Omnibus & Cab Co.* v. *Mills,* 21 Colo. App. 582, 122 Pac. 798.)

It is alleged that dynamite was negligently stored, kept and thawed in the mine where mining operations were carried on, at a point in the mine about seventy-five feet from the incline shaft, where, should an explosion of same occur, means of escape would be cut off, and where, should an explosion occur, the lives of the employees would be imperiled. This charge necessarily involved the proposition as to whether or not a reasonably safe place was provided. The proof shows that the explosive properties of dynamite are greatly increased when heated; that dynamite heated to the extent to which it was in this case was likely to be exploded by a jar. While it is true that no work was done on the level where the dynamite was stored and thawed, the level had connection with the shaft which was constantly in use, and this was the shaft through which the men were taken to and from their work, and was likewise the shaft where the appellant was working at the time he sustained the injury. With the possibility of an explosion at any time, or rather with the probability of an explosion at any time, the installation of this thawer at the place where it was used constituted a flagrant disregard of the safety of the men who had occasion to use the shaft. (*O'Brien* v. *Corra-Rock Island Min. Co.,* 40 Mont. 212, 105 Pac. 724.)

We suppose the nonsuit was granted because, as contended by the respondents, it was largely a matter of speculation as to what caused the explosion to occur. Even though the cause was largely a matter of speculation, the granting of the motion was wrongful for, as already stated, the other grounds, the failure to provide a safe place and the storage of powder in excess of 3,000 pounds, were in the controversy. We insist, however, that even as to this ground, the proof was such as to warrant its sub-

mission to the jury. True, our view of the evidence as to the cause of the explosion is a theory, but it is a theory which the existing facts authorize and sustain. It is said that other theories as to the cause of the explosion might likewise be advanced. Suffice it to say that they were not advanced, and even if they were, it would be a question for the jury to say whether they were tenable or not in the light of the facts. Respondents insist, however, that the appellant must show what actually did cause the explosion. We insist that proof to that extent is not required. (See *Luengene* v. *Consumers' Light, H. & P. Co.*, 86 Kan. 866, 122 Pac. 1032; *O'Brien* v. *Corra-Rock Island Min. Co., supra.*)

On the facts disclosed by the record, the explosion itself made out a *prima facie* case of negligence. (*Hardesty* v. *Largey Lumber Co.*, 34 Mont. 151, 86 Pac. 29.)

The evidence shows that Westlake, Ryan, the shift boss, and Russell, the skip-tender, were in the shaft above the level where the dynamite was, repairing the track, and below them and above the level two other men. So far as the record discloses, at the time of the accident the two men were inactive and were waiting until the work being done by Ryan and his associates was finished. These were the only persons who were in the immediate neighborhood of the dynamite, and on the level itself there is no evidence to show the presence there of anybody. The employee who attended to the thawer was, at the time of the accident, in a lower level where his body was afterward found. The powder exploding under these circumstances renders applicable the doctrine of *res ipsa loquitur.* (*Judson* v. *Giant Powder Co.*, 107 Cal. 549, 48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020; *San Juan Light & Transit Co.* v. *Requena*, 224 U. S. 89, 56 L. Ed. 680, 32 Sup. Ct. Rep. 399; *Kearner* v. *Charles S. Taner Co.*, 31 R. I. 203, 29 L. R. A. (n. s.) 537, 76 Atl. 833.) The simple fact that the relation of master and servant existed does not prevent the invocation of this doctrine. (*Hardesty* v. *Lumber Co., supra; Byers* v. *Carnegie Steel Co.*, 159 Fed. 347, 86 C. C. A. 347.)

It is asserted that the appellant in this case assumed the risk. The appellant was a timberman and worked far removed from the men in the level where this thawer was installed. He visited the thawer once for a few moments for the purpose of getting some powder, and at that time the powder, as to heat, was all right. In the case of assumption of risk there must exist the elements of knowledge and an appreciation of the danger. (*O'Brien* v. *Corra-Rock Island Min. Co., supra; Osterholm* v. *Boston & Mont. etc. Min. Co.,* 40 Mont. 508, 107 Pac. 499; *Hollingsworth* v. *Davis-Daly Estates Copper Co.,* 38 Mont. 143, 99 Pac. 142; *Anderson* v. *Northern Pac. Ry. Co.,* 34 Mont. 181, 85 Pac. 884.)

*Mr. Jesse B. Roote,* and *Mr. J. E. Healy,* for Respondents, submitted a brief and argued the cause orally.

There is no showing in pleading or in evidence that the excessive quantity of powder had anything to do with the explosion; there is neither pleading nor evidence that it cut off anyone's escape, or in any way caused injury, either to plaintiff or anyone else. The rule laid down in the case of *Monson* v. *La France Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243, is clearly applicable here. (See, also, Thompson on Negligence, sec. 45; Labatt on Master and Servant, 803, notes 4, 5.)

There is, we insist, no pleading of the doctrine of a safe place, and it is not in this case. But if it were there is no showing in pleading or in evidence which justifies anything being said or intimated that such was not furnished, and even the claim of excessive quantity of powder does not reach it, as there was and is no showing that the excess has anything to do with the place or the cause of the explosion. The *O'Brien* v. *Corra Rock Island Case* has no bearing here, for in that case ore was being stoped by blasting, with the accompanying vibration of machine drills right up against, and in forty feet of, a powder magazine, caps being kept with the powder. (40 Mont. 212, 105 Pac. 724.)

The utter inapplicability of the cases of *Judson* v. *Giant*

*Powder Co.,* 107 Cal. 549, 48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020, *Kearner* v. *Chas. S. Tanner Co.,* 31 R. I. 203, 29 L. R. A. (n. s.) 537, 76 Atl. 833, *San Juan* v. *Requena,* 224 U. S. 89, 56 L. Ed. 680, 32 Sup. Ct. Rep. 399, and similar cases, as bearing upon the doctrine of a safe place or upon that of *res ipsa loquitur,* as applied to master and servant cases, is apparent. This court cannot say from the pleadings or evidence herein that the sole cause of explosion can be traced home to the defendants, to the exclusion of all other reasonable hypotheses.

The doctrine of *res ipsa loquitur* is not applicable here, and is not, according to the weight of authority, applicable to master and servant cases, in any event. (1 Dresser on Employers' Liability, sec. 50; *Northern Pac. R. Co.* v. *Dixon,* 139 Fed. 737, 71 C. C. A. 555, and cases cited; *Lynch* v. *Ninemire Packing Co.,* 63 Wash. 423, 115 Pac. 838; *Dalton* v. *Selah Water Users' Assn.,* 67 Wash. 589, 122 Pac. 4; *Reino* v. *Montana Min. Land Dev. Co.,* 38 Mont. 291, 99 Pac. 853; *White* v. *Spreckels,* 10 Cal. App. 287, 101 Pac. 920; *Christiansen* v. *Oregon S. L. Ry. Co.,* 35 Utah, 137, 18 Ann. Cas. 1159, 20 L. R. A. (n. s.) 255, 99 Pac. 676; *De Yoe* v. *Seattle Electric Co.,* 53 Wash. 588, 102 Pac. 446, 104 Pac. 647, 1133.)

The case of *Byers* v. *Carnegie Co.,* relied on by appellant, does not involve this doctrine, for there the only question involved was as to a defective appliance, to the condition of which, by the exclusion of other causes, the injury and its cause were traced, to-wit, a defective valve. Nor does the *Hardesty Case,* in this state, show any different doctrine; there the cause was traced to the defects in piling the lumber, without straps or binders, and this was affirmatively shown to be the direct, efficient and proximate cause of injury. (*Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515; *Olsen* v. *Montana Ore Pur. Co.,* 35 Mont. 400, 89 Pac. 731; *McGowan* v. *Nelson,* 36 Mont. 67, 92 Pac. 40; *Quinn* v. *Utah Gas etc. Co.* (Utah), 129 Pac. 362; *Lochhead* v. *Jensen* (Utah), 129 Pac. 347; *Sowers* v. *McManus,* 214 Pa. 244, 63 Atl. 601; *Bishop* v. *Brown,* 14 Colo. App. 535, 61 Pac. 50; *John Morris Co.* v. *Southworth,* 154 Ill. 118, 39 N. E.

1099; *Marshall* v. *Welwood*, 38 N. J. L. 339, 20 Am. Rep. 394; *Losee* v. *Buchanan*, 51 N. Y. 476, 10 Am. Rep. 623; *Huff* v. *Austin*, 46 Ohio St. 386, 15 Am. St. Rep. 613, 21 N. E. 864; *Veith* v. *Hope Salt etc. Co.*, 51 W. Va. 96, 41 S. E. 187, 57 L. R. A. 410; *Illinois Central Ry. Co.* v. *Phillips*, 49 Ill. 234; *Kleebauer* v. *Western Fuse etc. Co.*, 138 Cal. 497, 94 Am. St. Rep. 62, 60 L. R. A. 377, 71 Pac. 617; *Denver etc. R. Co.* v. *McComas*, 7 Colo. App. 121, 42 Pac. 676.)

MR. JUSTICE SANNER delivered the opinion of the court.

Action by appellant to recover damages for personal injuries caused by an explosion of dynamite in a mine of the respondent company on January 18, 1911. Nonsuited upon the trial, he appeals from the judgment. The allegations of the complaint touching the cause and manner of the accident are as follows: "That on the 18th day of January, 1911, and for some time prior thereto, the defendants negligently stored and kept and thawed in said mine, where said mining operations were carried on, large quantities of dynamite and other highly explosive substances, and, as plaintiff is informed and believes, largely in excess of 3,000 pounds, and at a point in said mine about seventy-five feet from said incline shaft, and at said shaft where, in its downward course, it reached the 200-foot level, and where, should an explosion of same occur, escape by those working in said mine, in the employ of the defendant company using said incline shaft as a means of egress, would be cut off, and where, should an explosion of said dynamite occur, the lives of the said employees of said defendant company, working in said mine and near said incline shaft, would be imperiled; * * * that the said defendants so storing and keeping said dynamite and other highly explosive substances, as aforesaid, and at the place designated negligently placed a portion of same in a tight compartment for storage preparatory to use, and, for the purpose of thawing the same and the said dynamite and other explosive substances so placed in said compartment for the purpose of being thawed, the defendants negligently used and caused to be

used electricity to such an extent that said dynamite and other highly explosive substances so being thawed, as aforesaid, were heated to excess; and plaintiff further avers that the use of electricity for the purpose named, as a thawing agency and in the manner stated and at the place named and to the extent used, was highly dangerous—all of which facts the defendants knew, or, in the exercise of reasonable diligence, could have known; and plaintiff avers that the use of electricity in the manner in which the same was used there by defendants for the thawing of said dynamite was gross and wanton negligence on their part; * * * that on the 18th day of January, 1911, said dynamite and other explosives so being thawed, as aforesaid, and through and by reason of electricity being used for thawing the same, and by reason of said dynamite so being thawed being heated to excess through the use of said electricity in the manner in which it was, exploded, and through the explosion of same all of the dynamite so stored in said mine, as aforesaid, exploded, and through the explosion of said dynamite and other explosives, as aforesaid, and by reason of the force of such explosion, said plaintiff so working in said incline shaft received injuries," *etc.*

No special difficulty is presented in the dissection of these allegations; and, for the purpose of determining what proof was admissible under them, and whether a sufficient case was made to go to the jury, we say they fairly and sufficiently allege that the appellant's injuries, occasioned by the explosion, were due to the negligence of respondents in the following particulars: In having more than 3,000 pounds of explosives in the mine; in having explosives stored at a place in the mine where, should they explode, escape by those in the mine would be cut off; in having explosives stored at and near the shaft where, should they explode, the lives of the persons working in the shaft would be imperiled; and in the method used for "thawing," to-wit, the use of electricity in such a manner and to such a degree that the portion of the explosives being thawed became heated to excess. So construing the complaint, we proceed to ascertain the value of the case made, having in mind the rule that the appellant

**[1]** was not required to prove negligence in all the particulars alleged (*Beeler* v. *Butte & London Dev. Co.*, 41 Mont. 465, 110 Pac. 528), but that it was sufficient to take the case to the jury if the evidence presented in this behalf tended to establish that negligence in any of these particulars caused his injuries. (*Hoskins* v. *Northern Pac. R. Co.*, 39 Mont. 394, 102 Pac. 988.)

The allegation of negligence in storing more than 3,000 **[2]** pounds of explosives in the mine charges the violation of a specific duty imposed by section 8546, Revised Codes, and such a violation is negligence *per se*. (*Conway* v. *Monidah Trust*, 47 Mont. 269, 132 Pac. 26; *Melville* v. *Butte-Balaklava C. Co.*, 47 Mont. 1, 130 Pac. 441; *Neary* v. *Northern Pac. R. Co.*, 41 Mont. 480, 110 Pac. 226; *Monson* v. *La France Copper Co.*, 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243.) The respondents, insisting that the presence of negligence *per se* is of no importance unless it was a proximate cause of the injury, call our special attention to the case of *St. Louis, I. M. & S. R. Co.* v. *McWhirter*, 229 U. S. 265, 57 L. Ed. 1179, 33 Sup. Ct. Rep. 858, and assert that "there is no showing in pleading or in evidence that the excessive quantity of powder had anything to do with the explosion." It is a rule so fundamental as to be axiomatic, **[3]** to which the *McWhirter Case* adds nothing, that before negligence, however established, can become a basis of recovery, causal connection must be shown between it and the injury complained of. This court has so held on several occasions, including that of *Monson* v. *La France Copper Co., supra,* which we are assured is decisive against the appellant. The *Monson Case* aptly expresses the rule, and as aptly indicates the limit of its application. That action was for the death of a miner who, it was alleged, had fallen from a cage in the defendant's mine because of the operation of the cage without the gates required by statute—a clear charge of negligence *per se*. In the course of the decision this court, speaking through the Chief Justice, said: "We find the neglect of duty on the part of the defendant and the death of the deceased established beyond question, * * * but no fact or circumstance appears from which any reasonable

conclusion may be drawn that this neglect of duty bears a direct, proximate, causal relation to the death of deceased.   There is no direct evidence that the deceased got into the cage at the 1,400-foot level, but, assuming that this fact is established,   *   *   * there is no evidence as to how the deceased got out of the cage; *   *   *   there is nothing to show whether he died from natural causes, or from the violence of a fall, or from being squeezed by the cage as it passed the timbers.'' How wide the divergence is between the situation thus disclosed and that at bar is manifest. Here it is established that the dynamite which was being kept in the Keating mine—whether more or less than the law allows— exploded and produced appellant's injuries.   When a quantity of dynamite by exploding produces injury, there is a causal connection between the dynamite and the injury; and if the existence of that quantity in that place is negligence, a causal connection is made by the explosion between that negligence and the injury.   It does not answer to say that a quantity of dynamite less than 3,000 pounds may or would have exploded under the same circumstances, or that the explosion of a quantity less than 3,000 pounds, under the same circumstances, may or would have produced the same injury.   To suppose that a specific causal connection must be shown between the injury and the existence or explosion of that portion of the dynamite which exceeded 3,000 pounds would entirely defeat the statute, considered as a foundation of civil liability.   The appellant's injuries were caused by the explosion of a quantity of dynamite kept in respondents' mine, which it is claimed was greater than that allowed by law; this, if true, was sufficient; for ''where the cause of an injury is specifically ascertained, the law will not stop to speculate upon what might have occurred had such cause been absent.''   (Thompson on Negligence, secs. 45, 49.) Whether at the time the explosion occurred there were to exceed 3,000 pounds in the mine is a matter about which men may differ upon reading the record; but, having in view the rule that upon a motion for nonsuit the evidence must be taken in its most favorable light, and to establish whatever it fairly tends to prove,

it is deducible from the testimony that such was the fact.   Hence, upon this aspect of the case, a sufficient showing was made to take it to the jury.

The allegation of negligence in storing the dynamite at a place in the mine where, should it accidentally explode, escape by those working in the mine would be cut off, also charges the violation of a specific duty imposed by section 8546, Revised Codes.   Such [4]   a violation is negligence *per se;* but it is obviously of such a character that no causal relation can exist between it and any injuries save those suffered by persons whose escape had in fact been cut off by the explosion.   The appellant was not one of these; he was above the place of storage, above the point of explosion, and his means of egress were in no wise affected by it. The lack of causal connection between his injuries and the place of storage—considered as a potential danger, by stopping egress in case of explosion—is perfectly clear.

But the place of storage presents another aspect under the allegation of negligence in storing the dynamite at a place where, [5]   should an explosion occur, the lives of persons working in the shaft, among whom was the appellant, would be imperiled. As to this he invokes the doctrine that the master is obliged to use reasonable care to furnish his employee with a reasonably safe place in which to work, the respondents insisting that the complaint does not charge a violation of that duty, and that "the doctrine of a safe place is not in the case."   While it is true that the words customarily used in formulating this charge do not appear in the complaint, the language actually employed is their equivalent.   In *O'Brien* v. *Corra-Rock Island Min. Co.,* 40 Mont. 212, 105 Pac. 724, the only plea of negligence was that, at a point about forty feet from where the plaintiff was working, the defendants "had negligently and wrongfully stored and were keeping a large and dangerous quantity of dynamite," which exploded and killed Daniel O'Brien; but we held that under it the measure of the master's liability was to use reasonable care to provide the servant with a reasonably safe place in which to work.   Turning, then, to the evidence, we observe:

That the appellant was engaged in the shaft at a point about fifty feet above the 200-foot level; that a large quantity of dynamite was kept at the 200-foot level, near the shaft in which appellant was working; that it was stored at a point about seventy-five feet from the "thawer," in which dynamite was being heated so as to be rendered more readily explosive; that the dynamite both in the thawer and at the shaft, exploded; that by the explosion appellant was injured, his life imperiled, and the life of one of his companions destroyed. It is said that in point of fact there is no analogy here with the *O'Brien Case,* because caps were stored with the dynamite in that case. The difference is one of detail, not of principle. So far as we can tell, there was no exigency or custom that required the storing of the dynamite so close to the shaft that the effect of its explosion could be felt therein, or so near to the thawer as to increase the danger of explosion; and if, as may be inferred from the facts shown, the danger of explosion was increased by storing the large quantity of dynamite at a point so near the thawer, then, for the reasons stated in the *O'Brien Case,* enough was shown to take this case to the jury on the question whether the respondents had negligently failed to furnish appellant with a reasonably safe place in which to work.

The appellant also insists that, independently of the foregoing contentions, a sufficient showing was made as to the negligent cause of the explosion, under the allegations of the complaint touching the methods of thawing. According to the testimony, [6] the purpose of using a thawer is to heat cold dynamite which is not sufficiently sensitive for mining purposes, so as to make it more readily explosive. The more it is heated the more it will respond to the instrumentalities capable of inducing explosion. The thawer was a cabinet within a cabinet, situated along a drift about twenty-five or thirty yards from the shaft; the outer cabinet consisted of an excavation in the drift inclosed by a front made of scrap lumber set into the walls and floor of the drift, "put up to make a fairly close covering," and covered with gunnysacks and rags; the entrance to this outer

cabinet was through a door large enough for a person to pass through conveniently. The inner cabinet was a box 2x3 feet in size; the whole front side of it being removable. It was constructed of new lumber. Within it were four shelves made of boards, some of which were perforated, and two 32-candle power, and three 16-candle power, incandescent electric lights. In thawing the dynamite was laid upon the shelves in the inner cabinet, where the heat generated by the electric lamps brought it to or beyond the desired stage. Thawed dynamite was also kept in boxes in the outer cabinet, preparatory to distribution among the miners as needed. How much heat was generated by the means employed is not shown, and there was no thermometer or other device in the cabinet by which it could be ascertained; nor is there any testimony showing the exact degree to which dynamite should be thawed in order to be available for mining purposes and at the same time be reasonably safe, considering the nature of the substance. The record, however, is replete with testimony that it was often too hot. Some of the witnesses testified that it was sometimes so hot as to be sweaty and mushy; when in that condition it was especially sensitive and dangerous to handle. On two occasions it was so hot when delivered to the miners that they felt impelled to cool it before using, for fear of a premature explosion. Surely it was a question for the jury whether a method capable of producing such results was a reasonably safe one, or whether, as employed, it was unsafe in the respect alleged; and, as the master is obliged to use ordinary care to select such methods or appliances as are reasonably safe, having in mind the nature of the business in hand, it is clear that ample proof was made of negligence in this regard.

The respondents argue, however, that since the appellant charges the explosion to have occurred through the overheating of the dynamite, his case has failed, because there is no evidence that heat will explode dynamite, or that the thawer was generating a degree of heat sufficient to effect that result. The witness Boulware distinctly testified that the dynamite could be exploded by heat alone; "getting hot in the sun might explode

it," he said.   But we do not understand the appellant to have been so limited by his complaint that he was obliged to show a spontaneous explosion from heat alone; his allegation touching the overheating of the dynamite posits a *conditio sine qua non,* which, if established by the proof and shown to be negligent, is sufficient.   (*Lundeen* v. *Livingston E. Light Co.,* 17 Mont. 32, 41 Pac. 995; *Meisner* v. *City of Dillon,* 29 Mont. 116, 74 Pac. 130; *O'Brien* v. *Corra-Rock Island Min. Co., supra; Stewart* v. *Stone & Webster E. Corp.,* 44 Mont. 160, 119 Pac. 568.)   The question, therefore, is whether there was sufficient evidence that overheating of dynamite caused the explosion, either directly or as an ·indispensable condition.   When the explosion happened, there was in operation a thawer capable of heating dynamite to excess, and dynamite was being heated in it.   On the very day of the explosion, dynamite had come from this thawer overheated to the stage called "mushy."   Unthawed dynamite, such as the deposit near the shaft, does not readily explode, even with cap and fuse.   Dynamite thawed to the degree proper for mining purposes does not commonly explode unless cap and fuse are applied, but dynamite heated to excess may explode from heat alone.   No mining operations were carried on in the drift where the thawer was.   The appellant had nothing to do with its handling.   No one went in or out at that level but the powderman, and he was in the level below when the explosion occurred.   After the explosion there was nothing left of the thawer but scattered pieces of wood, and the rock was displaced where it had been.   In the absence of a countervailing explanation, and upon the circumstances stated, it is proper to ascribe the explosion to but one source, the thawer, and to but one cause, the overheated condition of the dynamite therein.

Whether, thus overheated, the dynamite exploded spontaneously or because susceptible to some impulse otherwise inadequate, it was not necessary for the appellant to show; but it was his privilege to account for the explosion, if he could, in such a manner as to cut off all escape from liability.   In his effort to accomplish this, he was met by many adverse rulings, of which

he complains.    There was testimony that the bulbs in the thawer were so situated, with reference to the holes in the shelves, that moisture, if generated in the cabinet, could get to them; that the dynamite was sometimes heated to such a degree as to have moisture upon the sticks; that an electric bulb, when inclosed, may get so hot as to burn wood or set clothing afire; that it can be heated by electricity so that the heat itself will break the glass, or that the glass would be broken by a drop of water striking it; that when a bulb breaks there is a report "sometimes like a 30-30 or a 32 revolver cartridge." One witness also testified that, heated to the degree it sometimes was by the thawer, dynamite will explode from a jar or concussion such as would be caused by the bursting of an electric light bulb of the same character as those used in the thawer. But other testimony to the same effect was excluded. It is true that the witnesses from whom this evidence was sought claimed no precise knowledge of the constituents of dynamite, or of the exact degree to which it must be heated to be thus responsive; but they were all practical miners who had observed and handled dynamite and knew its properties from the practical point of view. Speaking generally, and without reference to those instances in which the rulings may have been justified on strictly technical grounds, we think the testimony was competent and admissible. Whether the collapse of a bulb would suffice to explode dynamite when heated to a degree possible in the thawer, and whether a bulb might reasonably be expected to collapse under the conditions existing in the thawer, were not irrelevant inquiries; for if the collapse of a bulb was a matter to be reasonably anticipated, and if such a collapse would suffice to explode dynamite heated to a degree possible in the thawer, then it was negligence to employ a system in which these conditions might concur; and if they did concur, escape from liability would be impossible. The bursting-bulb theory may or may not be worthy of consideration under the facts as finally established; but to the extent that it might be warrantably credited by the

jury, it tended to re-enforce the contention of appellant under the allegations in question.

Appellant also sought to show by several witnesses who were miners, and who had worked in several mines besides the [8] Keating, that electricity was not elsewhere employed as a thawing agency. This evidence was rejected upon objections by respondents, their theory, as advanced in the trial court, being that the master might select any method he saw fit for the conduct of his business. Needless to say, this was incorrect; the master may select any method which is reasonably safe; and, "while not conclusive on the question of negligence, evidence is generally admissible in an action for personal injuries, to show whether or not a master's machinery, appliances, ways and methods are such as are in ordinary and common use by others in the same business." (26 Cyc. 1108; *Forquer* v. *Slater Brick Co.,* 37 Mont. 426, 97 Pac. 843; *Kinsel* v. *North Butte Min. Co.,* 44 Mont. 445, 120 Pac. 797.) If, therefore, the complaint had tendered the issue that the use of electricity for thawing, without regard to the manner of use, was negligence, the evidence would have been admissible. But as we read the complaint, it does not charge that it was negligence to thaw by electricity in any event, but to use electricity for thawing in the manner and to the extent employed. Under this construction, the exclusion of the evidence was proper.

In another series of questions the appellant sought to elicit the opinions of certain witnesses as to whether, having in view [9] the overheating of the powder on previous occasions, the method employed for thawing was a safe one. In some instances the witness was not sufficiently qualified, but otherwise there is no force in any of the objections addressed to these questions in the court below. The method in question was the use of electricity in the manner and to the extent employed, and the inquiry was relevant and material; for, although it may be said that, given the facts, the jury could tell whether the method was a safe one, yet it cannot be said that the jury were necessarily as competent to pronounce upon this subject as were some

of the witnesses whose opinions were rejected. (*Coleman* v. *Perry,* 28 Mont. 1, 72 Pac. 42; *Copenhaver* v. *Northern Pac. Ry. Co.,* 42 Mont. 453, 464, 113 Pac. 467.)

Other rulings were made adverse to appellant in the course of the examination of witnesses which are assigned as error. As to them we find that whatever error was committed was cured by the subsequent admission of the testimony, and so they are of no avail on this appeal.

Some space is given in the briefs to the discussion of the ruling admitting, over objection, the testimony of Boulware before the coroner's jury, and the refusal of the court to strike it out [10] on motion. It could not be stricken in its entirety, for the very reason that it should not have been admitted in its entirety, *viz.,* parts of it—and parts only—were admissible. The only purpose that any of it could serve was to show that at the inquest Boulware had made statements, touching the accident, at variance with those given on the trial, and such of these as it contained were admissible if denied or if recollection of them were disclaimed (Rev. Codes, sec. 8025); but the testimony of Boulware at the inquest contained much matter of opinion, and some of pure hearsay, which in no way tended to contradict the particular facts or opinions given by him upon the trial. The admission *in toto* of his testimony before the coroner's jury was wrong, but as the case did not reach the jury, we are unable to see how the appellant was prejudiced by it.

The final question is whether the case as presented by the appellant discloses assumption of risk. We think not. The only risk which it is claimed he assumed is that of the explosion [11] of the dynamite at the shaft. Whatever the condition of that dynamite may have been, and however likely the explosion from causes within his knowledge, the explosion was not so caused according to the record, and he had no knowledge of the conditions from which it *prima facie* did proceed. To make a case of assumption of risk it is not enough that the injured party knew of the thing from which harm might come; he must know and appreciate the danger from which he suffered.

(*O'Brien* v. *Corra Rock-Island Min. Co., supra; Osterholm* v. *Boston & Mont. etc. Co.,* 40 Mont. 508, 529, 107 Pac. 499.) Paraphrasing the language of this court in *Moyse* v. *Northern Pac. R. Co.,* 41 Mont. 272, 108 Pac. 1062, we may say: He assumed the risk of all dangers incident to the dynamite at the shaft as he saw them; but he had no cause to think, when he went to work at the point above that the dynamite would be exploded by the negligent use of a thawer seventy-five feet away, out of his sight, and with which he had nothing to do.

The judgment is reversed and the cause is remanded for retrial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.