BOYD, Appellant, *v.* GREAT NORTHERN RAILWAY CO. ET AL., Respondents.

(No. 6,367.)

(Submitted January 11, 1929. Decided February 2, 1929.)

[274 Pac. 293.]

86

*Victor R. Griggs,* for Appellant, submitted a brief, and argued the cause orally.

88

*Mr. W. L. Clift* and *Mr. R. H. Glover*, for Respondents, sub-mitted a brief; *Mr. Clift* argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

This action was brought to recover damages for personal injuries received by plaintiff while employed as a member of a storehouse crew of defendant company, on account of alleged negligence. Defendants answered, denying the negligence charged, and alleging affirmatively that plaintiff assumed the risk and was guilty of contributory negligence. Issue was joined by reply. Upon the trial of the cause, and at the conclusion of plaintiff's testimony, defendants' motion for a nonsuit was sustained, and judgment entered accordingly. Plaintiff appeals from the judgment.

Defendants' motion for nonsuit was based upon the grounds: (1) That the complaint fails to state a cause of action; (2) of failure of proof of allegations of the complaint; (3) of assumption of risk; (4) of contributory negligence; and (5) that there is no causal connection shown between the lifting of an angle-iron of the alleged weight of four hundred pounds said to have resulted in the injury and the injury.

The complaint is almost identical with that in the case of *Sorenson* v. *Northern Pacific Ry. Co.*, 53 Mont. 268, 163 Pac. 560, and alleges in substance, that, while plaintiff was in the employ of the defendant company, and under the immediate direction and control of the defendant Johnson, its foreman, whom he was obliged to obey, he was ordered and directed by Johnson, and it became and was his duty, with another employee, to lift the angle-iron above referred to and about twelve feet in length, and carry it a distance of about one hundred feet, and place it upon a loading platform; that to lift and carry the same with reasonable safety required the services of at least four experienced, able-bodied and strong men, which fact was well known to defendants, or should, by the exercise of ordinary diligence, have been known to them,

but was not known to him; that it was the duty of the defendants to exercise reasonable care to furnish a sufficient number of men to lift and carry the angle-iron, so that plaintiff would not be exposed to danger in the performance of his duty; that defendants failed to perform their duty in that behalf; that, knowing that at least four experienced and strong men were necessary for that purpose, they furnished only one man besides plaintiff to do the work; that plaintiff had never had any experience in lifting irons of the kind described, which fact was well known to defendants; that the shape of the angle-iron made it difficult for one experienced in lifting to determine its weight, and that plaintiff, being inexperienced, was unable, by the exercise of due diligence, or at all, to determine, and plaintiff did not know at the time, its weight, or that two men were insufficient to carry the same with safety; that through the negligence of defendants in failing to furnish sufficient men or apparatus to carry the iron with reasonable safety, and while plaintiff was assisting in lifting and carrying the iron, he suffered the injuries complained of.

When plaintiff seeks to recover for actionable negligence, the complaint must allege: (1) That the defendant was negligent; (2) that plaintiff was injured; and (3) that the negligence charged was the proximate cause of the injury. (*Grant* v. *Nihill*, 64 Mont. 420, 210 Pac. 914; *Stones* v. *Chicago, M. & St. Paul Ry. Co.*, 59 Mont. 342, 197 Pac. 252; *Barry* v. *Badger*, 54 Mont. 224, 169 Pac. 34.) The complaint must be liberally construed "with a view to substantial justice between the parties" (sec. 9164, Rev. Codes 1921), and the court must disregard any error or defect which does not affect the substantial rights of the parties (sec. 9191, Id.).

Measured by these rules, and for the reasons stated in *Sorenson* v. *Northern Pacific Ry. Co.*, supra, we are of opinion that the complaint is sufficient.

The next question for determination is: Did plaintiff assume the risk of injury? Generally, the question of assumption of risk is one of fact for the jury to determine. This is

true where the evidence is in such a condition that fair-minded men might draw different conclusions. When it furnishes ground for but one inference, it presents a question of law for determination by the court. (*Monson* v. *La France Copper Co.*, 43 Mont. 65, 114 Pac. 779; *Anderson* v. *Northern Pacific Ry. Co.*, 34 Mont. 181, 85 Pac. 884; 18 R. C. L. 676; 39 C. J. 1178.)

The general rule in cases of this character—"strain cases"— is that the employee is the best judge of his own muscular capacity, and the risk is upon him not to overtax. The exception to the rule exists when the employee is of immature years, or is inexperienced in the particular work at which he is injured. (*Sorenson* v. *Northern Pacific Ry. Co.*, supra; *Matson* v. *Hines*, 63 Mont. 214, 207 Pac. 474; *Sherman* v. *Texas etc. R. Co.*, 99 Tex. 571, 91 S. W. 563.)

In order to put upon the servant the assumption of the risk of a danger, he must not only know of the danger, but he must also know of and appreciate the dangers arising therefrom. (4 Thompson on Negligence, sec. 4652; *Grant* v. *Nihill*, supra; 18 R. C. L. 668.) And, in determining whether the servant had full appreciation, his experience and understanding must be considered. (18 R. C. L. 667.)

Plaintiff testified that at the time of the injury he was forty-six years of age, and employed by defendant company as storehouse employee for a period of four days prior to the date of the injury; that he had advised defendant Johnson that he had come from the ranch; that he was injured about 11:30 A. M. of the fifth day of his employment while assisting another employee in carrying a piece of angle-iron, eleven feet six inches in length, weighing 320 pounds; that an angle-iron is a straight iron, and another piece comes down at right angle. "When we started to carry this iron the defendant Carl Johnson was right by me. He told me to pick it up and get to hell out of there with it"; that he did not know at the time how much the iron weighed, and, prior to going to work for defendant company, he had never had any

experience in lifting irons of this type or lifting of that nature; that he had had no experience lifting whatever outside of being a farmer and doing ordinary lifting required on a farm; that he did not know that the iron was too heavy for two men to lift and carry; that the iron was carried about ninety feet, lifted as high as his head, and put on a platform; that during the first two days of his employment he and five others were engaged in unloading heavy bridge timbers, this "was about as heavy work as an ordinary laborer is required to do"; most of the timbers were rolled with cant hooks. For one day prior to the accident, plaintiff had been engaged with five others in moving pieces of iron and steel from the yard to the platform. "The small pieces would be carried by myself and others alone. When it got to be a little bit larger two of us would carry it. Didn't seem to be any system, only we were there and done it. * * * When it got heavy we would all take hold of it. * * * Some pieces required two men and four of us would carry some of them. * * * We men simply picked up what we wanted to carry and carried it over and dumped it on the platform. * * * That is the way we worked on Friday until the job was completed. * * * We moved all we could possibly move by two men. * * * The day before Mr. Johnson said whenever a piece looked heavy four or six men should take hold of it. * * * When I raised a piece of timber or piece of iron I could tell whether or not I could pick it up." On the morning of the accident four men were working in pairs; at the time of the injury only one other employee was present. "We did the work the same method as the day before, except we had less men and heavier stuff." After carrying the iron in question, plaintiff and others were engaged in putting irons in racks on the platform. About twenty minutes after carrying the angle-iron plaintiff became sick, and, after taking a drink of water, began to throw up blood; he was removed to a hospital, where he remained for a period of four weeks.

From a careful examination of the testimony we think the evidence is in such a condition that fair-minded men might draw different conclusions and presented a question for the determination of the jury.

The case of *Matson* v. *Hines*, supra, relied upon by defendants, is not in point. In that case plaintiff was a man of mature years, experienced in the work he was performing, and testified that he had before assisted in carrying rails weighing 750 or 800 pounds, and knew that six or eight men were necessary to move the rail with reasonable safety, and at the time of the injury there were only plaintiff and three others lifting and carrying the rail. The court, under these circumstances, properly held that plaintiff must have appreciated the danger when he attempted to move the rail with only three men to assist him.

We agree with counsel for defendants that "the question of contributory negligence in this case is closely akin to that of assumption of risk." We cannot say as a matter of law that plaintiff was guilty of contributory negligence. In the condition of the evidence this was a question for the jury.

Counsel for defendants contend that no causal connection is shown between the lifting and the injury.

Plaintiff was required to prove by competent evidence, not only that the defendants were negligent, but that such negligence was the proximate cause of his injury—the causal connection between the negligence and the injury must affirmatively appear. (*Kern* v. *Payne*, 65 Mont. 325, 211 Pac. 767; *Wallace* v. *Chicago, M. & P. S. R. Co.*, 48 Mont. 427, 138 Pac. 499.) Whether the injury sustained is the proximate consequence of defendants' wrongful act is ordinarily a question for the jury; however, where from the undisputed facts the court is able to see that the injury is a remote and not the proximate result of defendants' acts, the question becomes one of law for its determination. (17 C. J. 1059.)

The testimony shows that approximately twenty minutes after lifting and carrying the iron plaintiff became sick, threw

up blood, and was taken to a hospital, and was unconscious for several days; that, when he became conscious, he complained of pain in the arm and shoulder; there was no pain in his side for four weeks after leaving the hospital. There was evidence that prior to the injury plaintiff was in good health and physical condition; his physical condition after the injury was shown. Dr. Burke testified to examinations of plaintiff, made about a year after the injury, and in his opinion plaintiff's condition could have been the result of lifting and carrying the iron in question.

We think the evidence shows that, prior to lifting and carrying the angle-iron, plaintiff was not subjected to any unusual lifting or strain; that up to that time a sufficient number of men had been furnished to carry on the work in hand; and that, from the time plaintiff assisted in carrying the iron until he became ill, he had been engaged in light work.

In cases of this character, evidence of good health prior to the injury, and of suffering and ailments immediately or shortly thereafter, which are shown by competent evidence to be reasonably imputed to it, is sufficient to carry the question to the jury (17 C. J. 1059), and the efficient cause may be shown by indirect or circumstantial evidence (*Wallace* v. *Chicago, M. & P. S. R. Co.,* supra). On this question we think there was sufficient evidence to go to the jury.

Defendants next complain that plaintiff failed to establish that defendants neglected to furnish a sufficient number of men to carry the iron. There is no merit in this contention. Plaintiff testified that, in a conversation had with defendant Johnson soon after the occurrence, Johnson said: "That is what a man gets for not having men enough, also a tractor to handle it on," and "there should be four men or more carrying this stuff." Plaintiff also testified that, after having carried the iron, it was his opinion that two men were not enough to carry it. The weight of the evidence and the credibility of the witness was for the jury.

This court has held "that the failure of the employer to provide a sufficient number of competent employees to perform the work in hand with reasonable safety to all those engaged in its accomplishment is culpable negligence." (*Sorenson* v. *Northern Pacific Ry. Co.*, supra; *Verlinda* v. *Stone & Webster Eng. Corp.*, 44 Mont. 223, 119 Pac. 573.) Whether the defendants furnished a sufficient number of men for the work undertaken was primarily a question to be determined by the jury. (*Bonn* v. *Galveston Ry. Co.* (Tex. Civ. App.), 82 S. W. 808; *Supple* v. *Agnew*, 191 Ill. 439, 61 N. E. 392.)

Having in mind the rule that, upon a motion for nonsuit, the evidence must be taken in the light most favorable to plaintiff, and deemed to establish whatever it fairly tends to prove (*Westlake* v. *Keating Gold Min. Co.*, 48 Mont. 120, 136 Pac. 38), and that "no cause should ever be withdrawn from the jury unless the conclusion from the facts necessarily follows as a matter of law that no recovery could be had upon any view which could reasonably be drawn from the facts which the evidence tends to establish" (*McCabe* v. *Montana Central Ry. Co.*, 30 Mont. 323, 76 Pac. 701), we are of the opinion that the case called for the judgment of the jury.

Judgment is reversed, and cause remanded.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and ANGSTMAN concur.