SPRAGUE, Respondent, *v.* NORTHERN PACIFIC RAIL-
WAY CO., Appellant.

(No. 2,769.)

(Submitted February 11, 1910.  Decided February 21, 1910.)

[107 Pac. 412.]

*Railroads—Highway Crossings—Injuries to Travelers—Com-
plaint—Sufficiency—Contributory Negligence—Operation of
Trains—Signals.*

Railroads—Highway Crossings — Injuries to Travelers — Complaint — Con-
tributory Negligence—Sufficiency.
1.  Whether, from the fact that a traveler driving a team of horses
up to a point ten feet from a railroad track, intending to cross it,
where he could for the first time see a rapidly approaching train, neg-
ligence on his part was inferable from his act in turning instead of
stopping still, was one for the jury and not one of law; hence his com-
plaint, in an action to recover for the killing of a led team and dam-
age to his vehicle, containing, among others, the above statement, was
not open to the objection that it was insufficient under *Kennon* v. *Gil-
mer*, 4 Mont. 433, in that it showed upon its face that the proximate
cause of the injury was his own act in attempting to turn, he being
then in a place of safety, but did not disclose that, in doing as he did,
he exercised that degree of care and prudence which a reasonable per-
son would have used under like circumstances.
Same—Failure to Give Signals—Negligence.
2.  Failure on the part of defendant railway company to cause the
locomotive whistle to be sounded at a point between fifty and eighty
rods from a crossing, and the bell to be rung at a point within eighty
rods before reaching the crossing, as required by section 4289, Revised
Codes, was actionable negligence.
Same—Travelers on Highway—Duty to Look and Listen.
3.  It is incumbent upon one who approaches a railroad track with the
intention of passing over it, not only to look and listen for approaching
trains, but also to exercise care in selecting a position from which an
effective observation can be made.
Same—Contributory Negligence—Question for Jury.
4.  Where a traveler in approaching a railway crossing in a buggy, was
apprehensive of danger, stopped at a point from 100 to 300 feet be-
fore reaching it, listened for approaching trains, and continued vigi-
lant until he reached a point about ten feet from the crossing where
for the first time he had an unobstructed view of the track, when, on
observing a rapidly approaching train, he made efforts to extricate him-
self from his perilous situation, the questions whether in selecting the
point where he stopped and listened and in doing what he did there-
after, he exercised ordinary care to make the listening effective and
such prudence as reasonable men would have exercised under like cir-
cumstances, was a question of fact for the jury.

*Appeal from District Court, Gallatin County; W. R. C. Stew-
art, Judge.*

ACTION by Walter Sprague against the Northern Pacific Railway Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

## STATEMENT OF THE CASE, BY THE JUSTICE DELIVERING THE OPINION.

The complaint in this action alleges that on June 23, 1907, Lester Nelson and Charles Chappel, the agents and employees of the plaintiff, were driving from Chestnut to Bozeman in a buggy, and leading two horses belonging to the plaintiff; that at a point near Gordon Siding the public road crosses the track of the railway company; that from this point of crossing, for a distance of a quarter of a mile in an easterly direction, there were trees and brush along the railway track, and about ten feet distant therefrom, and of such height as to obstruct the view of the track to a traveler passing along the public road. It is then alleged that, as Nelson and Chappel "reached said crossing, the defendant carelessly and negligently caused one of its locomotives, with a train of cars attached thereto, being westbound train No. 3 operated by said defendant, to approach said crossing, and then and there to pass rapidly over the track of the said railroad at said point, and negligently and carelessly omitted its duty, while approaching the said crossing, to give any signal by ringing the bell or sounding the steam whistle, within a distance of eighty rods from said crossing, or at all, by reason whereof the said Lester Nelson and the said Charles Chappel were unaware of the approach of the said train; that in consequence thereof the locomotive struck and instantly killed the said two horses belonging to plaintiff, which were being led by said Lester Nelson and Charles Chappel, to the damage of plaintiff in the sum of $600." The complaint contains a second cause of action, couched in similar terms, for damages to the buggy and injury to one of the driving horses. It is alleged that the buggy and driving team belonged to W. J. Fransham, and that he assigned his claim for damages to the plaintiff before this

action was commenced. The answer admits the injuries, but denies negligence on the part of the railway company, and pleads contributory negligence on the part of the plaintiff. The allegations of this special plea were put in issue by a reply. At the conclusion of plaintiff's evidence in chief the defendant moved the court for a directed verdict, but the motion was overruled. Defendant then declined to offer any evidence, the cause was submitted to the jury, a verdict returned in favor of the plaintiff, and from the judgment entered upon the verdict, and from an order denying it a new trial, the railway company appealed.

In behalf of Appellant, there was a brief by *Mr. Wm. Wallace, Jr., Mr. John G. Brown,* and *Mr. R. F. Gaines,* and oral argument of the cause by *Mr. Gaines.*

The complaint is insufficient, because of the lack of averments therein to negative a most palpable *prima facie* case of contributory negligence upon the part of respondent's agents. (*Kennon* v. *Gilmer,* 4 Mont. 433, 2 Pac. 21; *Cummings* v. *Helena etc. Co.,* 26 Mont. 434, 68 Pac. 852; *Ball* v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871; *Nord* v. *Boston & Mont. etc. Co.,* 30 Mont. 48, 75 Pac. 681; *Birsch* v. *Citizens' El. Co.,* 36 Mont. 574, 93 Pac. 940; *Longpre* v. *Big Blackfoot Mill. Co.,* 38 Mont. 99, 99 Pac. 131; *Schroder* v. *Iron Works,* 38 Mont. 474, 100 Pac. 619; *Badinovac* v. *Northern Pacific Ry. Co.,* 39 Mont. 454, 104 Pac. 543.) And if the complaint does, as we insist, recite facts from which negligence on the part of respondent's agents is inferable, there being no exculpatory circumstances pleaded therein, the conclusion necessarily attaches that the lower court erred in holding that the pleading was sufficient. Under the most ordinary circumstances, the courts are agreed that a railroad track is a place of danger, and is, of itself, a warning of danger. (3 Elliott on Railroads, 3d ed., sec. 1165; *Oleson* v. *Lake Shore Ry.,* 143 Ind. 405, 42 N. E. 736, 32 L. R. A. 149; *Herbert* v. *Ry.,* 121 Cal. 227, 53 Pac. 651; *Elliott* v. *Chicago etc. Ry.,* 150 U. S. 245,

14 Sup. Ct. 85, 37 L. Ed. 1068.)    But here we have not merely
the ordinary case of a railway crossing accident, but added to
the danger necessarily incident to passing over a railroad track
is the feature of obstruction of the traveler's view of the rail-
road track and trains passing over the same for a distance of
"about a quarter of a mile before passing over said railroad
track and crossing," and yet there is nowhere in the complaint
the slightest claim of careful procedure on the part of the travel-
ers offered to excuse and account for their being in a place of
such danger at the time the accident occurred. They con-
fessedly traveled in the same direction as the approaching train
for a quarter of a mile without a chance for view of the rail-
road track, and from all that appears from the complaint to the
contrary they proceeded into their position of danger without
taking the slightest one of the precautions which the case of
*Hunter* v. *Montana C. Ry. Co.*, 22 Mont. 525, 57 Pac. 140 (and
indeed all the authorities on the subject) demand should be
taken by persons so situated.    The case of *Baltimore etc. Ry.* v.
*Abbegglen,* 41 Ind. App. 603, 84 N. E. 566, is in many respects
very similar to the one at bar, and a general reference is hereby
made thereto.

Where the question has been considered, the authorities are
uniform and unanimous that the looking and listening and the
stop for that purpose must so immediately precede the attempt
to cross the railroad track as to eliminate the chance of danger
then not discoverable, becoming imminent during the interven-
ing time of their travel from that point to and across the track.
(2 Thompson on Negligence, sec. 1656; Elliott on Railroads, sec.
1166; *Kelsay* v. *Railway*, 129 Mo. 362, 30 S. W. 339; *Winter* v.
*New York Ry. Co.*, 66 N. J. L. 677, 50 Atl. 339; *Martin* v. *Rail-
way*, 150 Cal. 124, 88 Pac. 702; *Missouri etc. Railway* v. *Jenkins,*
74 Kan. 487, 87 Pac. 702; *Beyel* v. *Railway*, 34 W. Va. 538, 12
S. E. 534; *Aurelius* v. *Railway*, 19 Ind. App. 584, 49 N. E.
858; *Haas* v. *Railway*, 47 Mich. 401, 11 N. W. 219.)    We
also invite the court's attention to the following cases which,

with reference to the dangerous nature of the crossing and the chance for clear view, are particularly apposite here. In each of these cases a recovery was denied upon the proposition that plaintiff himself was negligent as a matter of law: *State* v. *Railway Co.*, 102 Md. 257, 62 Atl. 755; *Allen* v. *Railway Co.*, 197 Mass. 298, 83 N. E. 864; *Sims* v. *Railway Co.*, 116 Mo. App. 572, 92 S. W. 911; *Smith* v. *Railway Co.*, 107 Va. 725, 60 S. E. 57; *Colorado etc. Ry. Co.* v. *Thomas*, 33 Colo. 517, 81 Pac. 801, 70 L. R. A. 683; *Chicago etc. Ry. Co.* v. *Wheelbarger*, 75 Kan. 811, 88 Pac. 532. The courts are agreed that where there is an opportunity to look from the vehicle, and this in a place of safety, precaution must be exercised, and this, Nelson and Chappel did not do. The mere fact that Nelson claimed he saw the train at the first opportunity is not conclusive, and especially so where the physical facts contradict him; in this latter event, the silent physical facts are to be given credence as against the speaking witness. (*Davis* v. *Railway Co.*, 159 Fed. 14; *Cawley* v. *Railway*, 101 Wis. 145, 77 N. W. 179; *Carlson* v. *Railway*, 96 Minn. 504, 113 Am. St. Rep. 655, 105 N. W. 555, 4 L. R. A., n. s., 349; *Philadelphia Ry.* v. *Peebles*, 67 Fed. 591, 14 C. C. A. 555; *Leithead* v. *Railway* (N. J.), 72 Atl. 453; *Aurelius* v. *Railway Co.*, 19 Ind. App. 584, 49 N. E. 859; *Sanguinette* v. *Railway Co.*, 196 Mo. 466, 95 S. W. 393; *Northern Pac. Ry.* v. *Freeman*, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014; 3 Elliott on Railroads, p. 392.)

*Mr. George Y. Patten,* and *Mr. H. A. Bolinger,* submitted a brief in behalf of Respondent. *Mr. Patten* argued the cause orally.

Unless there can be said to be an inference of negligence from the mere fact that Nelson and Chappel were driving along a public highway toward the railroad crossing—which manifestly there cannot—there is no suggestion or inference of negligence in the complaint requiring us to set forth other facts showing due care.

In the case of *Baltimore etc. R. Co.* v. *Abbegglen,* 41 Ind. App. 603, 84 N. E. 566, which is principally relied upon by counsel for appellant on this branch of the case, the pleader did not content himself, as we have, with the bare allegation of the approach of the person injured to the crossing, and the injury thereat because of the negligence of the defendant, but attempted to explain fully the conduct of the deceased, and to show his freedom from contributory negligence. The court in that case held that this recital showed contributory negligence, rather than the absence of it. We have kept ourselves within the rule, while in that case, by alleging too much, plaintiff brought himself within the exception. The general rule adopted by this court, which renders it unnecessary to allege freedom from contributory negligence in the complaint, applies to cases of injuries at railroad crossings. (33 Cyc. 1060.)

The duty to "stop, look and listen" is not an absolute and arbitrary one anywhere outside of Pennsylvania. The rule in cases of this kind is the same as in all negligence cases, and simply requires the exercise of ordinary care and prudence on the part of one approaching a railroad crossing, and the doing of what an ordinarily careful and prudent person would do under the circumstances. It is only where the facts show plainly that by looking or listening, or both, a person could see or hear a train in time to avoid danger, that the courts have held, as a matter of law, that the failure to do so constitutes contributory negligence. It is likewise well established, however, that where the stopping, looking and listening would be unavailing there is no duty to either stop, look or listen. (See *Peck* v. *Oregon Short Line R. Co.,* 25 Utah, 21, 69 Pac. 153; *Metcalf* v. *Central Vermont Ry. Co.,* 78 Conn. 614, 63 Atl. 636; *Terre Haute & I. R. Co.* v. *Voelker,* 129 Ill. 540, 22 N. E. 20; *Toledo etc. Ry. Co.* v. *Cline,* 135 Ill. 41, 25 N. E. 846; *Chicago etc. Ry. Co.* v. *Hinds,* 56 Kan. 758, 44 Pac. 993; *Atchison etc. Ry. Co.* v. *Hill,* 57 Kan. 139, 45 Pac. 581.) It was for the jury to say whether or not, upon the facts submitted, Nelson and Chappel exercised reasonable care and prudence. (33 Cyc. 1111, and cases cited.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

It is urged that the complaint does not state facts sufficient to constitute a cause of action, and that the evidence is not sufficient to sustain the verdict.

1. The attack upon the complaint proceeds upon the theory that the pleading contains allegations from which the plaintiff's negligence is plainly inferable, and, since it does not plead exculpation from such negligence, it is insufficient under· the rule established in this state that, if the complaint shows that the act of the plaintiff was the proximate cause of the injury, it must set forth the facts showing that he was free from negligence. (*Kennon* v. *Gilmer,* 4 Mont. 433, 2 Pac. 21; *Badovinac* v.. *Northern Pacific Ry. Co.,* 39 Mont. 454, 104 Pac. 543.) It is argued that the complaint discloses the peculiarly dangerous character of the crossing, by reason of the fact that a view of the railway track was obstructed from the public road until it reached within ten feet of the crossing, by the trees and brush, and this must be conceded. It is also insisted that the complaint shows that when Nelson and Chappel were ten feet from the crossing, their view of the track was not obstructed, and therefore it is said their coming into collision with the train on the track must be attributed to their want of ordinary care; for, it is argued, had they stopped ten feet from the track, they would have been in a place of safety, where they could have seen the approaching train, and could have avoided the accident. It is a legitimate inference to be drawn from the complaint that, for a space of ten feet before the track was reached at the crossing, a view of the track from the public road was unobstructed; but we are not able to agree with counsel for appellant that the conclusion follows from this fact that the collision with the train must have resulted from the negligent act of Nelson and Chappel. They had an equal right with the railway company to use the crossing, and therefore there cannot be any inference of negligence on their part from the fact alone that

they attempted to use it. If it could be said that it appears from the complaint that, when Nelson and Chappel reached a point ten feet from the track, where they could see the approaching train, they were in a place of safety, then we might agree with counsel for appellant in their conclusion; but we cannot say, as a matter of law, that when a man is seated in a buggy to which is attached a team of horses, the horses proceeding toward the track, and the man in the buggy only ten feet from the track, he is in a place of safety. Whether he would be or not is a question of fact for the determination of a jury; and this, too, notwithstanding the appellate court of Indiana, in *Baltimore etc. Ry. Co.* v. *Abbegglen,* 41 Ind. App. 603, 84 N. E. 566, treated a like question as one of law. We think the complaint is sufficient.

2. The evidence discloses that on the day in question Nelson and Chappell were coming from a point beyond Chestnut to Bozeman, driving in a covered buggy drawn by a team of horses, and were leading the team belonging to the plaintiff; that it was raining; that the road was muddy, and the horses and buggy made considerable noise; that for some distance east of the crossing a mountain stream ran between the public road and the railway track, and the waters rushing down this stream likewise made considerable noise; that the trees and brush along this stream obstructed a view of the track from the public road for a quarter of a mile or more east from the crossing; that when these men approached the crossing to a point within a distance of from ten to twenty feet of the track, their view of the track was then unobstructed; that they were expecting a train along at about that time; that the horses they were driving were gentle, and the men experienced in the handling of horses; that at a point from one hundred to three hundred feet before reaching the crossing, they stopped and listened for any approaching trains (they could not see the track on account of the trees and brush), and, not hearing any, they continued on. When from ten to twenty feet from the track, and when they first reached a point where a view of the track was unobstructed, they saw the train ap-

proaching from the east, coming downgrade, running very fast, apparently coasting and making little noise, and distant from the crossing from fifty to seventy-five yards. Chappel, who was driving, immediately turned the driving team to the right, apparently in an effort to get away from the track, but the hind wheels of the buggy and the led horses were struck by the train, the horses killed, and the buggy wheels injured. In turning the driving team away from the track, one of the horses was forced into a barb-wire fence, and was injured. There is some evidence tending to show that from the point where the men stopped, to the point where they first saw the train, they were vigilant in listening for trains, and that the steam whistle on the locomotive drawing the train was not sounded, nor was the bell rung at any point within eighty rods before the crossing was reached. By showing a failure on the part of the railway company to have the whistle sounded at a point between fifty and eighty rods from the crossing, and the bell rung from the point where the whistle was sounded until the crossing was reached, the plaintiff established the negligence on the part of the defendant company. (Revised Codes, sec. 4289; *Hunter* v. *Montana Central Ry. Co.*, 22 Mont. 525, 57 Pac. 140.)

But it is earnestly urged upon us that the evidence shows contributory negligence on the part of Nelson and Chappel, and many cases are cited which have to do with railroad crossing accidents. There is little, if any, disagreement as to the proper rules of law applicable in such cases, and it will not be necessary to review the decisions from other jurisdictions; for, in harmony with the great weight of authority, this court, in *Hunter* v. *Montana Central Ry. Co.*, above, in considering section 908 of the Civil Code of 1895 (section 4289, above), which required the whistle to be sounded and the bell to be rung, said: "These requirements are for the benefit of the public, and persons traveling upon the public highways have a right to expect a compliance on the part of the railroad company. But failure of obedience on the part of the railroad company to the requirements of the statute does not excuse the citizen from the use of

at least ordinary diligence and prudence; so that if one, upon approaching a railroad crossing, intending to pass over it, fails to make a vigilant use of his senses—that is, to look or listen, and to stop for this purpose, if necessary, to learn if there is danger—and by reason of this failure to exercise this precaution he is injured, then he contributes directly to such injury, and cannot be heard to say that the railroad company did him the injury, and should compensate him for its wrong. The injury in such case is attributable to the recklessness and want of care in the person himself.'' Though directly implied in the language above, the following may be added: ''The duty to look and listen requires the traveler to exercise care to select a position from which an effective observation can be made. The mere fact of looking and listening is not always a performance of the duty incumbent upon the traveler, for he must also exercise care to make the act of looking and listening reasonably effective.'' (Elliott on Railroads, 2d ed., sec. 1166.)

These two declarations fairly cover the range of decisions cited by counsel for appellant. When the evidence in this case is tested by these rules, we think it cannot be said, as a matter of law, as was done in the *Hunter Case,* that the plaintiff's own negligence contributed to the injury which he sustained. The facts disclosed in the *Hunter Case* show such wanton negligence on the part of Hunter and his associates, which directly contributed to Hunter's injury, that any decision of the case other than the one rendered would have done violence to one's sense of justice and the most elementary rules of the law of negligence; while in this instance the evidence shows that Nelson and Chappel were apprehensive of danger; that they stopped at a point from one hundred to three hundred feet before reaching the crossing and listened for approaching trains; that they were vigilant in listening from that point until they reached a place where the track could be seen; and that as soon as the approaching train was, or could have been, observed, they made efforts to extricate themselves from their apparently perilous situation. Whether, in selecting the point which they did select to stop

and listen for approaching trains, Nelson and Chappel exercised ordinary care to make their listening effective, and whether in doing what they did, from that point until the injury occurred, they exercised such care and prudence as reasonable men under like circumstances would have exercised, were questions of fact for the jury to determine, and with the verdict thereon we are not disposed to interfere.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

