[No. 10217.   Department One.   June 1, 1912.]

JAMES MERWIN, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY et al., *Appellants*.[1]

RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE OF TEAMSTER—QUESTION FOR JURY. The contributory negligence of a teamster in driving across railroad tracks at a much used city crossing is for the jury, where it appears that he waited at the first track for the passage of an east-bound train approaching on that track, and while waiting looked east for west-bound trains approaching on the other tracks, having an unobstructed view for 1,500 or 2,000 feet, and saw no trains, and that, after passage of the train, he immediately started to drive across the tracks, when he was struck by a west-bound train running thirty-five or forty miles an hour, the city speed limit being 20 miles, and which was obscured by the first passing train, but could have been seen if the plaintiff had waited until the passing train had run its length or a little more, it being probable that he could have passed in safety if the speed limit had not been exceeded.

[1]Reported in 123 Pac. 1019.

SAME—SPEED LIMIT—KNOWLEDGE OF PLAINTIFF. The fact that the plaintiff had "sometimes" seen trains exceeding the speed limit at the crossing, or that there was no evidence that he had actual knowledge of the speed limit ordinance, does not affect his right to have the jury instructed that he might assume that the trains would not exceed the city speed limit.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered December 21, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained at a railroad crossing. Affirmed.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for appellants.

*Govnor Teats, Hugo Metzler, Leo Teats,* and *Ralph Teats,* for respondent.

PARKER, J.—This is an action to recover damages for personal injuries which the plaintiff alleges resulted to him from the negligence of the defendant railway company, and Hayes, its locomotive engineer, in the operation of one of its trains in approaching the crossing of Spinning street, in the city of Puyallup. The defendants denied the negligence charged against them, and also alleged that the plaintiff's injuries resulted from his own carelessness and contributory negligence. A trial before the court and a jury resulted in a verdict and judgment in favor of the plaintiff, from which the defendants have appealed.

Spinning street, in Puyallup, crosses the tracks of the railway at right angles, at a point some distance east of the depot. At this crossing there are two main line tracks, the north one being used by the west-bound trains and the south one by the east-bound trains. Immediately to the south, there is another track running parallel with the main line tracks, from the depot, east for a distance of about one mile beyond this crossing, where it leaves the main line. This is a branch line track, and is used by trains running to Car-

bonado. The distance between the main line tracks is nine feet and ten inches, and the distance between the branch track and the south main line track is seven feet and ten inches. This crossing was being extensively used by the public on the day of respondent's injury, and for some time prior thereto, which fact was known to appellant Hayes, the engineer.

On January 2, 1911, respondent was employed as a teamster for a paving company having its plant near the crossing, and immediately to the north of the railway tracks. He was then hauling paving material, from the plant south across the railway tracks, where street paving was progressing. On returning to the plant during the forenoon of that day, after delivering a load of street paving material, as he approached the railway tracks from the south, he stopped his team at the crossing with the horses' heads about eight feet from the most southerly track, in order to await the passing of a Carbonado passenger train which he noticed approaching from the west. This train was running about six or seven miles per hour. When he had stopped, and just before the train passed over the crossing, he looked to the east along the tracks and could then see a distance of from 1,500 to 2,000 feet, and would have been able to see a train approaching from the east upon any of the tracks, if such train had then been within that distance of him. His purpose was to ascertain whether or not he could safely proceed across the tracks so far as the approach of any trains from the east was concerned. When the Carbonado train had passed over the crossing, he immediately proceeded on his way, and when the horses' heads had reached the west-bound main track, he saw a passenger train a few hundred feet to the east approaching him at a high rate of speed upon that track. He was then in such a position with his team and wagon that his safest course was to proceed, which he did by urging his team forward; but before the rear end of his wagon passed entirely over the

west-bound track, it was struck by the west-bound train, throwing him from the wagon, and resulting in the injuries for which he now seeks recovery.

Two witnesses for respondent, one of whom had considerable railway experience, plainly saw the train and estimated its speed at 35 to 40 miles per hour. Appellant Hayes, the engineer in charge of the engine, estimated its speed at about 20 miles per hour. At that time, there was in force in the city of Puyallup an ordinance restricting the speed of trains within the city of Puyallup to 20 miles per hour. There is no direct evidence as to respondent's actual knowledge of the existence of this ordinance. He testified that he had sometimes seen trains pass over this crossing which he judged were going 40 miles per hour. The eastern boundary of the city is about three-fourths of a mile east of this crossing, so that the west-bound train ran that distance within the city limits before reaching the crossing. If respondent had waited after the passing of the Carbonado train until it had run its length or a little more, being about 300 feet, he could have seen along the tracks to the east a sufficient distance to observe the approach of the west-bound train in time to have avoided being injured, by waiting until it passed. He says he heard no whistle from the west-bound train, though he claims to have not only looked for the approach of such a train immediately before the passing of the Carbonado train, but also listened for the whistle of a west-bound train after the passing of the Carbonado train while it shut off his view to the east. He claims to have been particularly cautious in this regard, because he appreciated that it was a dangerous crossing. Appellant Hayes, the engineer, says he sounded the whistle on approaching the crossing. These facts are in the main not seriously in dispute except as we have indicated.

It is first contended that the trial court erred in denying appellant's motion for a nonsuit and for a directed verdict. It is not contended that the evidence was insufficient to carry

the case to the jury upon the question of the appellants' negligence; indeed, we cannot see how it could be seriously so contended; but it is insisted that the evidence so conclusively shows respondent to be guilty of contributory negligence that the trial court should have so decided as a matter of law, and instructed the jury accordingly. We are unable to agree with this contention. It may be conceded that the evidence is such as to furnish strong ground for argument in support of the contention that respondent's negligence materially contributed to his injuries; but we cannot say that there is no room for honest difference of opinion upon that subject. This makes it a question for the jury. It seems to us reasonable minds might honestly differ as to whether or not respondent pursued such a course as an ordinarily prudent person would under the circumstances. He stopped before reaching the first track, and while there looked east where he could see for such a distance that he might well conclude that no train running at a reasonable rate of speed in view of its approach to the crossing and the fact that the crossing was extensively used and within the city limits, would reach the crossing before he could drive safely over it by proceeding immediately after the passing of the Carbonado train. It seems probable that had the west-bound train been running within the ordinance speed limit respondent would have passed over the west-bound track upon which it was running, before it reached the crossing. Assuming that appellants were negligently running the train at an excessive rate of speed, of which there was ample evidence warranting the jury in so believing, we cannot hold that respondent was required to notice or anticipate such negligence on the part of appellants, unless we can decide, as a matter of law, that the evidence conclusively shows that respondent had actual knowledge of such negligence, or that he had knowledge of facts such as would lead a reasonably prudent man to then anticipate or discover such negligence. We think the evidence did not warrant the court in so decid-

ing, and that the question of respondent's contributory negligence was properly left to the jury. This is in harmony with our decision in *Richmond v. Tacoma R. & Power Co.*, 67 Wash. 444, 122 Pac. 351, and our former decisions there reviewed.

The trial court gave certain instructions to the jury which are claimed to be erroneous, the substance of which is, that as the city ordinance limited the rate of speed of trains, the respondent could proceed on the assumption that the railway company would operate its trains in accordance therewith, and that it was not incumbent on him to anticipate the operation of a train in excess of the ordinance speed limit. It is argued that these instructions were erroneous in view of the fact that respondent testified that he had sometimes seen trains running over this crossing which he judged were going 40 miles per hour, and also in view of the fact that there was no evidence as to his actual knowledge of the existence of such an ordinance. It seems to us that his mere statement that he sometimes saw trains running at that high rate of speed over this crossing would not require him to anticipate such a high rate of speed at this time. Had his statement shown that he had known of such continuous or frequent violations of the ordinance, it might be argued that he should have anticipated such a rate of speed; but the evidence on that question is too meager to warrant us in holding the instruction erroneous for that reason. It is insisted that, since there is no evidence showing respondent's actual knowledge of the existence of the ordinance, he was not entitled to assume that the trains would be operated at a speed not exceeding 20 miles per hour. We think, in the absence of any evidence of his actual knowledge upon that question, he will be presumed to have known of the existence of the ordinance. *Richmond v. Tacoma R. & Power Co.*, *supra,* and cases there cited support this view.

We find no error in the record, and therefore affirm the judgment.

DUNBAR, C. J., CROW, GOSE, and CHADWICK, JJ., concur.