RAU, Administrator, Appellant, *v.* NORTHERN PACIFIC RAILWAY CO. et al., Respondents.

(No. 6,583.)

(Submitted March 4, 1930. Decided March 29, 1930. Opinion on Motion for Rehearing June 12, 1930.)

[289 Pac. 580.]

*Mr. H. A. Tyvand* and *Mr. Albert Anderson*, for Appellant, submitted a brief; *Mr. Tyvand* argued the cause orally.

524

*Messrs. Johnston, Coleman & Jameson* and *Messrs. Gunn, Rasch & Hall,* for Respondents, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

528

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the plaintiff as the administrator of the estate of August Harry Rau, deceased, to recover the sum of $50,000 for the decedent's estate because of the injury and resulting death of August Harry Rau on September 10, 1928, by reason of the defendant company's alleged negligence in the operation of its trains across a public highway, "at a point about one mile easterly from the city of Billings." By answer, the defendant pleaded the contributory negligence of the decedent. Issue was joined by reply and the case was regularly brought on for trial before a jury. At the conclusion of the evidence offered by the plaintiff, the defendants moved the court for a nonsuit which was sustained, and judgment accordingly entered dismissing the action. A motion for a new trial was made by the plaintiff, which was by the court denied, and the plaintiff has appealed from the judgment.

The only question involved is whether the court erred in taking the case from the jury and granting a nonsuit.

It is alleged by the plaintiff in his complaint, and by the defendants admitted, that on or about the tenth day of September, 1928, the defendant company owned and was in possession of two railroad tracks extending easterly from the city of Billings side by side, commonly called double tracks; that there was a public highway extending in a general easterly direction from the city of Billings, which crossed the tracks of the railroad company in a northerly and southerly direction; that on the date mentioned August Harry Rau was traveling in an automobile along the highway, outside the corporate limits of any incorporated city or town, in a westerly direction towards the city of Billings; and as he reached the railroad crossing a freight train was moving easterly along the southerly railroad track; that when the deceased reached

the crossing he brought the automobile he was driving to a full stop between ten and one hundred feet from where the highway intersects the railroad tracks; that when the freight train had passed over the crossing the deceased started to drive the automobile along the highway across the railroad tracks; and that as he reached the northerly track, and was crossing the same, he was struck by a locomotive attached to a train of passenger cars belonging to the defendant company, going westerly along the northerly track across the highway, as a result of which the deceased was severely injured, from which injuries he died. It is by the plaintiff further alleged, although denied by the defendants, that such passenger train was at the time and place being run at "a dangerous rate of speed, to wit, in excess of forty miles per hour"; that the defendants "carelessly and negligently permitted and caused said locomotive and passenger cars to approach and pass over said highway and railroad crossing without causing the whistle of said locomotive to be sounded at a point between fifty (50) and eighty (80) rods from said highway and railroad crossing, and carelessly failed to cause the bell of said locomotive to be rung from said point between fifty (50) and eighty (80) rods from said highway and railroad crossing until the said highway and railroad crossing was reached; and the said defendants carelessly and negligently failed to or at all, at any time before passing over said crossing, blow the whistle or ring the bell on said locomotive, and carelessly and negligently failed to give any warning or signal of any kind of the approach of said locomotive; and the said defendants did then and there carelessly and negligently run said locomotive against and collide with the automobile in which said August Harry Rau was riding, and the said August Harry Rau, and thereby inflicted grievous injuries upon him, from which injuries he soon thereafter died on or about the 10th day of September, 1928."

By way of affirmative defense, the defendants allege in their answer: "That as the deceased August Harry Rau approached said double tracks from the south there was an east

bound freight train passing over said crossing on the southerly track, which train, while so passing, obstructed the view of said Rau towards the east of any west bound train that might be approaching on the northerly track, and also interfered with his ability to hear any train approaching west on the northerly track; that as the east bound freight train passed over said crossing the said Rau ran his automobile up within ten or fifteen feet of the southerly track and immediately after the caboose of said east bound freight train had passed over the traveled portion of said crossing the said Rau carelessly and negligently and without taking the measures and ordinary precautions to ascertain whether any west bound train was approaching on the northerly track, drove said automobile upon said tracks immediately behind said caboose without waiting until it had passed a sufficient distance east of said crossing for him to ascertain whether a train was approaching west on the northerly track and by reason of which carelessness and negligence said automobile was struck, and the said August Harry Rau instantly killed, and defendants therefore allege that the injury and death of the said August Harry Rau, * * * , was due to the contributory negligence of said deceased, as hereinbefore alleged.''

We approach a decision of this appeal having in mind the settled rule in this state that a motion for a nonsuit is in effect a demurrer to the evidence, and in considering whether it should be granted every fact will be deemed proven which the evidence tends to establish, in light most favorable to the plaintiff's case. (*Roberts* v. *Chicago, M. & St. P. Ry. Co.*, 67 Mont. 472, 216 Pac. 332; *Robinson* v. *F. W. Woolworth Co.*, 80 Mont. 431, 261 Pac. 253; *Westerdale* v. *Northern Pac. Ry. Co.*, 84 Mont. 1, 273 Pac. 1051; *Boyd* v. *Great Northern Ry. Co.*, 84 Mont. 84, 274 Pac. 293.) And no case should ever be withdrawn from the jury unless the conclusion necessarily follows, as a matter of law, that a recovery cannot be had upon any view which could reasonably be drawn from the facts the evidence tends to establish. (*Nord* v. *Boston & Mont. C. C. & S. Min. Co.*, 30 Mont. 48, 75 Pac. 681; *Conway* v.

*Monidah Trust,* 52 Mont. 244, 157 Pac. 178; *Wagner* v. *Donald,* 67 Mont. 114, 214 Pac. 1099.)

It appears from the evidence that the deceased was a farmer, twenty-four years of age, in good health, industrious, possessed of good habits, earning about $100 per month, and that as a result of the accident he sustained injuries from which he suffered pain and died on the day of the collision, when being taken by train to Billings, about one mile distant.

Jess Rawls, his wife and baby were, on the occasion of the accident, riding in an open Studebaker car driven by Mr. Rawls in a westerly direction along the highway towards the city of Billings. As they approached the crossing they stopped as a freight train was passing, going in an easterly direction at a speed of about twenty-five miles per hour. The car driven by the deceased was also headed towards Billings and was then stopped about forty feet ahead of them awaiting clearance by the freight train, although the deceased had left the motor of his car running. It was an open "Ford roadster" without any side curtains on it. The deceased had stopped his car about twenty feet from the southerly track and thirty-five to forty from the center of the northerly track. He did not start his car up until the freight train had passed the crossing a distance of seventy-five or eighty feet; then started his car up at a rate of about five miles per hour and kept going until struck by the defendant company's locomotive. The engine hit the right rear wheel of the Ford car and carried the car until it struck a telephone pole, where it was whirled around and tore down a cattle-guard. The car was a complete wreck and the decedent was found badly injured, bruised and bleeding. The train, after striking the decedent's automobile, went on for a distance of a "good quarter of a mile before it came to a stop." The tracks were straight towards the east. The deceased was driving slowly and had traveled about thirty-five or forty feet before he was struck by the oncoming east-bound passenger train. The distance between the two tracks from center to center is thirteen feet and the distance between the rails of each track is four feet

eight inches. The witness estimated that the passenger train was going at a rate of sixty miles per hour, but on cross-examination stated that this was "of course, merely an estimate." Jess Rawls testified that, after the freight train had passed, the deceased started the car which he was driving in low gear across the tracks, and that the witness then saw the "passenger train locomotive come out from the rear end of the caboose of the freight train." The witness said that the freight train seemed to pick up speed as it went over the crossing and was going at a rate of about twenty or twenty-five miles an hour, and it had gone approximately seventy-five or eighty feet in clearance of the crossing before the deceased started to move his automobile. He testified that both he and the deceased started their cars preparatory to crossing the railroad tracks at about the same time after the freight train had cleared the south track; that he, after going about five to ten feet, again stopped his car as soon as he observed the head of the passenger train "come out from behind the caboose," and that the deceased kept going. Explaining the situation he says that "of course, during this time, while this freight train was passing the south track, the track beyond, the north track, was obscured from me. It did not become visible until the caboose had passed from the crossing and was proceeding— had proceeded on eastward. I stated this morning in answer to a question asked me by Mr. Tyvand, that my vision along the track, that is, beyond the caboose, after the caboose had cleared the crossing, was more restricted—that is, my view in the direction from which the passenger train was coming, than the view that Mr. Rau would have inasmuch as he was nearer to the railroad track. As he proceeded onward and got to the south track, by that time the rear end of the freight train—in fact the rear end of the caboose had proceeded some distance to the east, and from that point on, of course, his view in the direction in which the freight train was going and in the direction from which the passenger train was coming was quite a little more than what it had been before I started. Every foot would make two or three feet difference down the

track, yes, sir. I would say it probably would make more difference than two or three feet.'' He estimated that, from the *deceased's* position, the latter could see to the eastward along the northerly track a distance of about 200 feet at the time he attempted to cross the tracks. While waiting for the freight train to pass, the witness and his wife were engaged in conversation, and did not pay any particular attention to the length of time. He testified: ''It might have been two minutes or ten, I could not say. We sat there and visited, but how long I don't know. My wife and I visited; I didn't visit with the other man.'' He further testified that he did not hear any whistle of a locomotive of any train coming from the east, and did not hear any bell rung, and that the deceased started his car up in low in ordinary manner.

Mrs. Rawls testified that she would say the passenger train was running at sixty miles per hour, but did not know how fast the freight train was going when passing over the crossing. All that either of them could say as to the giving of crossing signals by whistle or bell was that they did not hear any.

William Schwartz testified that he was at his mother's place ''around 80 rods from the crossing.'' He went to his mother's house to get something and left his automobile on the right of way with the motor running and remained in the house about ten minutes. He saw the passenger train go by when he was there; it was going fast but he could not say just how fast. ''Just as a guess'' he would say sixty miles per hour. However, he said, ''It is merely a guess I am making as to the speed of the train from the casual observation I made of the two trains.'' As to the giving of the crossing signals, he said he did not hear any. However, he stated that he gave the passing trains ''just a casual glance. * * * There was nothing out of the ordinary in the movements of the two trains. I would not say that there was because I did not observe enough.''

So far as here applicable, the statute provides that no railroad ''shall permit any locomotive to approach any highway, road, or railroad crossing, without causing the whistle to be

sounded at a point between fifty and eighty rods from the crossing, and the bell to be rung from said point until the crossing is reached'' (sec. 6521, Rev. Codes 1921), and evidence which shows a violation of this statute by reason of failure to give the required signals of the approach of trains at crossings, makes out a prima facie case of negligence. (*Hunter* v. *Montana Central Ry. Co.*, 22 Mont. 525, 57 Pac. 140; *Sprague* v. *Northern Pac. Ry. Co.*, 40 Mont. 481, 107 Pac. 412; *De Atley* v. *Northern Pac. Ry. Co.*, 42 Mont. 224, 112 Pac. 76; *Walters* v. *Chicago etc. Ry. Co.*, 47 Mont. 501, 46 L. R. A. (n. s.) 702, 133 Pac. 357.) Negative testimony is sufficient to take the case to the jury. (*Riley* v. *Northern Pac. Ry. Co.*, 36 Mont. 545, 93 Pac. 948; *Mullery* v. *Great Northern Ry. Co.*, 50 Mont. 408, 148 Pac. 323; *Grant* v. *Chicago etc. Ry. Co.*, 78 Mont. 97, 252 Pac. 382, 385.)

Under the provisions of the statute, ''the defendants were charged with the duty of sounding the whistle at a point between 50 and 80 rods (between 825 and 1,320 feet), and ringing the bell from such point until the crossing was reached (*Sprague* v. *Northern Pac. Ry. Co.*, 40 Mont. 481, 107 Pac. 412), and plaintiff had the burden of proving that they did not do so. The testimony as to the alleged default in this respect was entirely negative. While negative testimony may be sufficient to establish such issue (*Walters* v. *Chicago, M. & P. S. Ry. Co.*, 47 Mont. 501, 46 L. R. A. (n. s.) 702, 133 Pac. 357; *Riley* v. *Northern Pac. Ry. Co.*, 36 Mont. 545, 93 Pac. 948; *Mullery* v. *Great Northern Ry. Co.*, 50 Mont. 408, 148 Pac. 323), the attendant circumstances must be such as to afford a reasonable opportunity to hear the warning signals (*Howe* v. *Northern Ry. Co. of New Jersey*, 78 N. J. L. 683, 76 Atl. 979; *Davis* v. *Payne*, 120 S. C. 473, 113 S. E. 325). Applying these rules, however, to the evidence in the instant case, we are unable to conclude that the attendant circumstances were such that reasonable men could reach no other conclusion than that no reasonable opportunity was afforded to plaintiff * * * to hear the warning signals.'' (*Grant* v. *Chicago etc. Ry. Co.*, supra.)

536

 Here we have testimony of negative character of but little evidentiary value, in view of the surrounding circumstances, namely, the passing of trains over the tracks and noise incident thereto, the running motor of the automobile driven by deceased when stopped to permit the freight train to clear the south track and noise in consequence, the existence of the north track, and the danger of a train passing over it, all of which placed upon the deceased a duty to exercise greater diligence, with due regard for his own safety, in attempting to cross the tracks. Conceding the sufficiency of such negative testimony to establish the fact, yet the statute did not excuse the deceased from the exercise of at least ordinary care for his own safety. (*Hunter* v. *Montana ·Cent. Ry. Co.*, supra; *Sprague* v. *Northern Pac. Ry. Co.*, supra; *Everett* v. *Hines*, 64 Mont. 244, 208 Pac. 1063.) While negative evidence may be sufficient to establish the fact that the required signals were not given, yet the character of testimony introduced in this case, standing alone, is not such as to relieve the plaintiff from showing that deceased exercised such care.

''The statement of a witness that he did not hear such a signal is without value as evidence, unless it further appears that he was in a position to hear, was attentive, and that the conditions were such that he would probably have heard such signal, if it had been sounded. (*Chicago & R. I. Ry. Co.* v. *Still,* 19 Ill. 499, 71 Am. Dec. 236; *Atchison etc. Ry. Co.* v. *Hague,* 54 Kan. 284, 45 Am. St. Rcp. 278, 38 Pac. 257; *Northern Cent. Ry. Co.* v. *State,* 100 Md. 404, 108 Am. St. Rep. 439, 3 Ann. Cas. 445, 60 Atl. 19; *Cotton* v. *Willmar etc. Ry. Co.,* 99 Minn. 366, 116 Am. St. Rep. 422, 9 Ann. Cas. 935, 8 L. R. A. (n. s.) 643, 109 N. W. 835; *Holmes* v. *Pennsylvania R. Co.,* 74 N. J. L. 469, 12 Ann. Cas. 1031, and note, 66 Atl. 412; *Foley* v. *New York Cent. etc. Ry. Co.,* 197 ·N. Y. 430, 18 Ann. Cas. 631, and note, 90 N. E. 1117; *Keiser* v. *Lehigh Val. R. Co.,* 212 Pa. 409, 108 Am. St. Rep. 872, ·61 Atl. 903; *Anspach* v. *Philadelphia etc. Ry. Co.,* 225 Pa. 528, 28 L. R. A. (n. s.) 382, note, Ann. Cas. 1916A, 163, 74 Atl. 373; *Baltimore & O. R. Co.* v. *Roming,* 96 Md. 67, 53 Atl. 672; *Culhane* v. *New*

*York Cent. etc. Ry. Co.,* 60 N. Y. 133.)'' (*White* v. *Southern Ry. Co.,* 151 Va. 302, 144 S. E. 424, 427.)

As was aptly said by this court: ''The attendant circumstances must be such as to afford a reasonable opportunity to hear the warning signals.'' (*Grant* v. *Chicago, M. & St. P. Ry. Co.,* supra.)

''Every person is bound to an absolute duty to exercise his intelligence to discover and avoid dangers that may threaten him. When, therefore, a plaintiff asserts the right of recovery on the ground of culpable negligence of the defendant, he is bound to show that he exercised his intelligence to discover and avoid the danger, which he alleges was brought about by the negligence of the defendant.'' (*Sherris* v. *Northern Pac. Ry. Co.,* 55 Mont. 189, 175 Pac. 269, 271; *Normandin* v. *Payne,* 65 Mont. 543, 212 Pac. 285, 286.)

''A person approaching a railroad crossing is required to take all reasonable precaution to assure himself by actual observation that there is no danger from an approaching train. The failure of the persons in charge of the train to keep a lookout and to give warning signals of its approach to the crossing does not relieve the traveler from the necessity of making a vigilant use of his senses to ascertain whether it is safe to proceed. (*Chicago, R. I. & P. R. R. Co.* v. *Houston,* 95 U. S. 697, 24 L. Ed. 542 [see, also, Rose's U. S. Notes]; *Hunter* v. *Montana Cent. Ry. Co.,* 22 Mont. 525, 57 Pac. 140.) It is not always sufficient if he does look and listen. The obligation resting upon him is to exercise care to make the act of looking and listening reasonably effective. (*Sprague* v. *Northern Pac. Ry. Co.,* 40 Mont. 481, 107 Pac. 412.) If he goes upon the crossing without taking this precaution, he is guilty of contributory negligence. (*George* v. *Northern Pac. Ry. Co.,* 59 Mont. 162, 196 Pac. 869; *Keith* v. *Great Northern Ry. Co.,* 60 Mont. 505, 199 Pac. 718.)'' (*Normandin* v. *Payne,* supra.)

''The rule as to the caution with which one must approach a railroad crossing in this state without being guilty of negligence has been thoroughly established, and requires a person

to use his senses vigilantly to determine whether or not a train is approaching, before he goes upon the track. This requires that he use his eyes and ears, and, if necessary to make his looking and listening reasonably effective, he must stop at such point as will accomplish that purpose." (*Keith* v. *Great Northern Ry. Co.*, 60 Mont. 505, 199 Pac. 718.)

Upon the facts appearing in this case, our views are in accord with those expressed by the supreme court of Ohio, namely: "When a passing train is upon the track nearest to the traveler, and one or more parallel tracks are beyond this track, the traveler on the highway must give heed to the fact that a fast moving train may be approaching the crossing in the opposite direction from that in which the train on the first track is moving, which may be entirely concealed from the view of the traveler by the moving train then occupying the crossing; and it is not the exercise of ordinary care for his own safety on the part of the traveler to await only until the passing train shall have cleared the crossing and then to go forward without waiting to ascertain whether another train is approaching the crossing on a track beyond that of the passing train. Time must be given to permit the passing train to get so far beyond the crossing that the traveler, while halted in a place of safety, may be afforded a clear view of the track or tracks in both directions, that he may thereby know whether a moving train is in close proximity to the crossing thereby endangering any attempt he may make to cross the tracks in front of such approaching train. The omission of such caution on the part of the traveler will constitute contributory negligence on his part sufficient to bar any recovery for damages against the railway company for injuries which he may sustain in a collision with a train, due to his omission to exercise the caution stated; and this is true, notwithstanding the fact that the employees of the railway company have neglected to give the signals of the train's approach to the crossing, required by law to be given." (*Pennsylvania R. Co.* v. *Rusynik,* 117 Ohio, 530, 56 A. L. R. 538, 159 N. E. 826, 828.)

In our opinion, in the absence of testimony in justification, it constituted contributory negligence for the deceased to go upon the railroad tracks at the crossing as he did without waiting until the freight train had gone sufficiently far in clearance of the crossing to give him an unobstructed view of the other track. (*George* v. *Northern Pac. Ry. Co.,* 59 Mont. 162, 196 Pac. 869; *Purdy* v. *New York Central & H. R. R. Co.,* 87 Hun, 97, 33 N. Y. Supp. 952.)

"While a case should never be withdrawn from the jury unless it appears as a matter of law that a recovery cannot be had upon any view of the facts which the evidence reasonably tends to establish, yet, when there is no evidence in support of plaintiff's case, or the evidence is so unsubstantial that the court would feel compelled to set aside a verdict if one should be rendered for plaintiff, a nonsuit should be granted. (*Loudon* v. *Scott,* 58 Mont. 645, 12 A. L. R. 1487, 194 Pac. 488.)" (*Grant* v. *Chicago etc. Ry. Co.,* supra.)

However, when, as in the action now before us, "the plaintiff's own case presents evidence which, unexplained, makes out prima facie contributory negligence upon his part, there must be further evidence exculpating him or he cannot recover. (*Hunter* v. *Montana Cent. Ry. Co.,* 22 Mont. 525, 57 Pac. 140; *Harrington* v. *Butte, A. & P. Ry. Co.,* 37 Mont. 169, 16 L. R. A. (n. s.) 395, 95 Pac. 8; *Longpre* v. *Big Blackfoot Milling Co.,* 38 Mont. 99, 99 Pac. 131; *Meehan* v. *Great Northern Ry. Co.,* 43 Mont. 72, 114 Pac. 781; *Molt* v. *Northern Pac. Ry. Co.,* 44 Mont. 471, 120 Pac. 809; *Neilson* v. *Missoula Creamery Co.,* 59 Mont. 270, 196 Pac. 357; *George* v. *Northern Pac. Ry. Co.,* 59 Mont. 162, 196 Pac. 869; *Cameron* v. *Judith M. & C. Co.,* 61 Mont. 118, 201 Pac. 575; *Puckett* v. *Sherman & Reed,* 62 Mont. 395, 205 Pac. 250; *Haney* v. *Mutual Creamery Co.,* 67 Mont. 278, 215 Pac. 656; *Holland* v. *Pence Automobile Co.,* 72 Mont. 500, 234 Pac. 284.)" (*Grant* v. *Chicago etc. Ry. Co.,* supra.)

"It is the rule also," said the late Mr. Chief Justice Brantly, speaking for this court, "that when the circumstances attending the injury, as detailed by the plaintiff's evidence,

raise a presumption that he was not, at the time, in the exercise of due care, he has failed to, make out a case for the jury. The burden is then upon him, and if he fails to introduce other evidence to remove this presumption, he is properly nonsuited. (Cases cited supra; *Harrington* v. *Butte, A. & Pac. Ry. Co.*, 37 Mont. 169, 16 L. R. A. (n. s.) 395, 95 Pac. 8; *Longpre* v. *Big Blackfoot Milling Co.*, 38 Mont. 99, 99 Pac. 131; *Zvanovich* v. *Gagnon & Co.*, 45 Mont. 180, 122 Pac. 272.)'' Then, after referring to the rule stated above in the case of *Sherris* v. *Northern Pac. Ry. Co.*, that learned jurist said: ''This statement of the rule requires the person approaching a railway crossing to take all reasonable precaution to assure himself by actual observation that there is no danger from an approaching train. The failure of the 'persons in charge of the train to keep a lookout and to give warning signals of its approach to the crossing does not relieve the traveler from the necessity of making a vigilant use of his senses to ascertain whether it is safe to proceed. (*Chicago, R. I. & P. R. R. Co.* v. *Houston*, 95 U. S. 697, 24 L. Ed. 542 [see, also, Rose's U. S. Notes]; *Hunter* v. *Montana C. Ry. Co.*, supra.) It is not always sufficient if he does look and listen. The obligation resting upon him is to exercise care to make the act of looking and listening reasonably effective. (*Sprague* v. *Northern Pac. Ry. Co.*, 40 Mont. 481, 107 Pac. 412.) If he goes upon the crossing without taking this precaution, he is guilty of contributory negligence, and, if injured, cannot recover.'' (*George et al.* v. *Northern Pac. Ry. Co.*, supra.)

Whether one is or is not familiar with a crossing does not affect the rule that he must exercise a vigilant use of his senses to ascertain whether it is safe to proceed. After the freight train passed, deceased started his car at the rate of five miles an hour towards the crossing. The north track, where the collision occurred, was at least thirty feet distant. Had he looked, he would have seen the passenger train approaching. He had ample room in which to stop his car before reaching the north track. As a matter of fact he could have stopped at or before reaching the south track, at which

point he was on a level and had vision of a straight track to the east for a great distance. Rawls, who was forty feet behind deceased, and unable to see as far down the track as deceased could see, saw the train coming after he had moved his car from five to ten feet, and stopped. And it must be recalled from the testimony that both Rawls and the deceased started their cars up preparatory to crossing the track at the same time. Before deceased reached the track he could have seen down the track 200 feet; but evidently he did not look. On the contrary, he drove on to the track, careless of his own safety, or possibly having the notion he could beat the train.

In our opinion the plaintiff has failed to sustain the burden which rested upon him to show that the deceased exercised ordinary and reasonable care for his own safety at the time of the accident. The plea of contributory negligence is sustained by the plaintiff's own evidence, and therefore the motion of the defendants for a nonsuit was properly granted.

The district court, following the rules long settled in this state, was in duty bound to take the action it did.

Upon further earnest study and consideration of the record in this case, upon the defendants' motion for a rehearing and plaintiff's objections thereto, the original opinion is withdrawn and this opinion substituted.

The motion for a rehearing having fully served its purpose, a rehearing is denied.

For the reasons stated the judgment will stand affirmed.

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE MATTHEWS concur.

MR. JUSTICE FORD: I dissent. The questions presented are close and most difficult of correct solution. Since the filing of the petition for a rehearing I have given further and earnest consideration to the case, which has only strengthened my belief in the correctness of the conclusion reached in the original opinion.

It seems to me that the majority have not properly applied the rule so long established in this jurisdiction, that on a motion for nonsuit the testimony must be viewed in the light most favorable to plaintiff (*Boyd* v. *Great Northern Ry. Co.*, 84 Mont. 84, 274 Pac. 293), and have, in fact, considered it in the light least favorable to plaintiff and most favorable to defendants.

Numerous cases are cited in the majority opinion to support the conclusion reached. However, the difficulty in cases of this character is that precedent is of little value or assistance; each case must be decided upon its own peculiar facts and circumstances. The language of Mr. Justice Matthews, speaking for the court in the case of *Willis* v. *Pilot Butte Min. Co.*, 58 Mont. 26, 190 Pac. 124, 127, is particularly pertinent here: "The difficulty in this and kindred cases arises from the fact that we must determine a question of fact rather than a proposition of law. No clear-cut rule is, or can be, laid down; each case must be decided on its own facts and attendant circumstances and forms no precedent for future decisions. 'Previous decisions are illustrations of the way in which judges look at cases, and in that sense are useful and suggestive; but I think we ought to beware of allowing tests or guides which have been suggested by the courts in one set of circumstances, or in one class of cases, to be applied to other surroundings, and thus by degrees to substitute themselves for the words of the act itself.' (Per Lord Loreburn, L. C., *Blair* v. *Chilton*, 8 B. W. C. C. 607, 113 L. T. Rep. (n. s.) 514, affirmed B. W. C. C. 324, 30 T. L. Rep. 623; footnote 76, p. 73, Workmen's Compensation Act, a Corpus Juris Treatise.) And the same jurist, in *Kitchenham* v. *Steamship Johannesburg*, A. C. 417, 4 B. W. C. C. 311, said: 'We have to decide each case on the facts. Argument by analogy is valueless. I am getting afraid to say anything more by way of judgment than that the appeal should be allowed or dismissed, because what one says in one case is used as an argument why one should decide a particular way in another case.'"

I cannot escape the conclusion that plaintiff made a case for the determination of the jury and that the court erred in granting a nonsuit.

MR. JUSTICE ANGSTMAN: I am unable to subscribe to the conclusions announced in the majority opinion. In my opinion the negative testimony, to the effect that the witnesses did not hear the whistle sounded or the bell rung was sufficient to make out a prima facie case of negligence *per se* on the part of the railway company in failing to give the statutory signals upon approaching the crossing.

The witness Schwartz testified that he was on the railroad right of way about eighty rods east of the crossing, getting into his car, which was parked at that place, as the passenger train passed. He heard no whistle sounded or bell rung. The statute requires the whistle to be sounded between fifty and eighty rods from the crossing, which was at or very near the place where the witness was when the train passed him. Certainly he had a reasonable opportunity to hear the warning signals, had they been given. He was closer to the train when the signals should have been given than those who might be at the crossing for whose benefit the statutory signals are required. Mr. and Mrs. Rawls heard no signals, and they were at the very place where the statutory signals are designed to afford notice of the approach of the train. They were sitting in an automobile which had come to a stop with the motor shut off. True, the motor in the Ford car, occupied by deceased, was left running. But it was forty feet from the car occupied by them. There is not any evidence that the Ford car made so much noise that the witnesses, who were forty feet removed, could not hear the signals of the approaching train had they been given.

It remains, then, to consider whether the evidence shows that deceased was guilty of such contributory negligence as to bar a recovery. The majority opinion seems to be founded upon the theory that it was incumbent upon plaintiff to assume

the burden of showing that the death of deceased was not proximately caused by his own contributory negligence.

But the rule is that the plea of contributory negligence is an affirmative defense and that defendant must assume the burden of proving it. The presumption is that a person takes ordinary care of his own concerns. (Subd. 4, sec. 10606, Rev. Codes 1921.) This is but a law of nature founded upon the instinct of self-preservation. (*Baltimore etc. R. Co.* v. *Landrigan,* 191 U. S. 461, 48 L. Ed. 262, 24 Sup. Ct. Rep. 137.) The burden rests upon defendant to overturn this presumption unless plaintiff's own evidence shows that the injury or damage complained of was proximately caused by his own contributory negligence. The question then is: Does plaintiff's evidence show that the death of deceased was proximately caused by his own contributory negligence?

Ordinarily this is a question for the jury's determination. (*Everett* v. *Hines,* 64 Mont. 244, 208 Pac. 1063.) The court, however, may determine the question when upon the evidence it is not possible for reasonable minds to reach different conclusions. In examining the record, therefore, we must bear in mind that, if any evidence is lacking to show that deceased's contributory negligence was the proximate cause of his death, the burden of supplying that evidence rested upon defendant and the motion for nonsuit should not have been granted.

The record does not disclose that deceased was familiar with the crossing in question and does not show that he knew of the existence there of the double tracks. In this respect the case is distinguishable from the case of *George* v. *Northern Pac. Ry. Co.,* 59 Mont. 162, 196 Pac. 869, 870, so much relied upon in the majority opinion. In that case the court observed: "He [plaintiff] was well acquainted with the crossing because it was continually in use through the day and early evening and he had often passed over it." Also, the case in this respect is unlike that of *Pennsylvania Rd. Co.* v. *Rusynik,* 117 Ohio, 530, 56 A. L. R. 538, 159 N. E. 826, so extensively quoted from in the majority opinion, for in that case it was noted: "Plaintiff was very familiar with this crossing; had been

over it both ways more than 100 times; knew that east-bound trains ran on the south track, and west-bound trains on the north track. He had often seen trains on both tracks, and knew the speed at which they ran." Similar facts also were shown in *Grant* v. *Chicago, Milwaukee & St. Paul Ry. Co.*, 78 Mont. 97, 252 Pac. 382.

Here, from aught that appears, deceased may not have known of the existence of the north track. There is no evidence tending to show at what point the deceased, sitting in the Ford car, could observe the north track. Whether the highway was level with the railroad, or whether in approaching the crossing from the south the highway proceeded upgrade or otherwise, does not appear. It was incumbent upon deceased to use that degree of care and caution for his own safety which a reasonably prudent person would have used under the same or similar circumstances. If he did not know of the existence of the north track, and there is no evidence that he did, it cannot be said that he was guilty of contributory negligence in not waiting until the freight train had passed farther to the east before starting over the crossing. If he did not know of the north track, after the freight train had passed the crossing there was no occasion for him to direct his attention to the possibility of approaching trains from the east, no warning signals having been given. It is a fair inference that, if he did not know of the existence of the north track, he might not have discovered it or the approaching train until he was so close to the north track as to justify him as a reasonably prudent person in believing that he would not be able to stop his car in time to avoid a collision, and, confronted with this emergency, chose the only alternative of proceeding forward. Whether he chose wisely is not to be judged by what now might appear to have been the safer course, but by the standard of action required of a reasonably prudent person under similar circumstances. (*Daniels* v. *Granite Bi-Metallic Consol. Min. Co.*, 56 Mont. 284, 184 Pac. 836; *Anderson* v. *United States R. R. Administration*, 203 Iowa, 715, 211 N. W. 872.)

Whether, had he been familiar with the crossing and known of the existence of the north track, he would have been guilty of such contributory negligence as to bar recovery under the circumstances, I express no opinion. I think, under the facts here presented, the ultimate question whether the contributory negligence of deceased, if any, was the proximate cause of his death, was for the jury, and that the judgment should be reversed and the cause remanded for a new trial.